Pullis Bros.' Iron Co. vs. Parish of Natchitoches et al.

## No. 13,194.

PULLIS BROS.' IRON COMPANY VS. PARISH OF NATCHITOCHES ET AL.—
RUSTON STATE BANK, INTERVENOR; ILLINOIS SUPPLY & CONSTRUC-
TION COMPANY VS. PARISH OF NATCHITOCHES ET AL.—RUSTON
STATE BANK, INTERVENOR, (CONSOLIDATED); IN RE RUSTON
STATE BANK, INTERVENOR, APPLYING FOR CERTIORARI
OR WRIT OF REVIEW TO THE COURT OF APPEAL,
FIRST CIRCUIT, STATE OF LOUISIANA.

51 1377
f105 628
105 636
105 755

### SYLLABUS.

A contractor having engaged to construct a courthouse, and pledged his contract
to a bank with full subrogation of his lien and privilege in order to obtain
advances of money to carry same to completion, and subsequently bought
materials for the construction of the edifice, upon terms of credit, in other
States than Louisiana, which were actually used therein, the furnishers of
materials are entitled to preference in receiving payment over the bank as
assignee, irrespective of the place where the contract for materials was en
tered into—they having made out and served attested accounts upon the
proper parochial authorities in pursuance of Revised Civil Code, 2772.

*L. E. Thomas* for the Intervenor.

*Scarborough & Carver* for Pullis Bros.' Iron Company and Illinois
Supply and Construction Company, Plaintiffs.

Respondent judges *pro se.*

Submitted on briefs May 20th, 1899.
Opinion handed down June 22, 1899.
Rehearing refused June 30th, 1899.

The opinion of the court was delivered by

WATKINS, J.  The following statement of facts has been extracted
from the brief of the intervenor's counsel, viz:

"In June, 1895, P. J. Gillen contracted with the police jury of
" Natchitoches parish to erect a court-house for $20,555.00.  On July
" 2nd, 1895, he made arrangements to get $14,000.00 from Ruston
" State Bank, to pay on said work, and executed a notarial assignment
" or pledge of all his rights as mechanic and contractor on said court-

87

"house, which was duly recorded on November 13th, 1895. On "August 19th, 1895, he contracted with plaintiff, Illinois Supply and "Construction Company, for pressed brick for the building at $12.00 "per M., delivered f. o. b. cars, St. Louis, Mo., amounting to $14,- "000.00, which contract was made simply by letters, and was never "recorded.

"In November, 1895, he ordered from Pullis Bros. Iron Company "some iron work for court-house, without privilege of inspection, "also by letter, and *to be delivered also at St. Louis, Mo.*

"On April 23d, 1896, Gillen failed, after having spent $20,000.00 "on the court-house, and the contract was relet to one C. D. Stewart, "for $11,600.00.

"On May 27th, 1896, plaintiffs gave president of police jury an at- "tested account, and also recorded their claim the same day. Gillen "owed the Illinois Supply and Construction Company $563.34, and "Pullis Bros. Iron Co., $219.00. In September, 1897, these suits were "brought, and the parish was garnisheed for what might be due Gil- "len, he being a non-resident. There is no denial of the debt.

"The Ruston State Bank intervened and set up that plaintiffs had "no lien, as it was a Missouri contract, and under the laws of their "own State, they had none. Further, that by virtue of their assign- "ment recorded, they were entitled to be paid in preference to plain- "tiffs anyway, which contention on the part of the bank was sanc- "tioned by the judge *a quo*, and judgment rendered accordingly, "which judgment was reversed by the Court of Appeals, and this ap- "plication was then made."

These two cases are presented together for convenience of argument, as both plaintiffs are domiciled in St. Louis, Mo., and the law ap- plicable to one, is equally applicable to the other.

It appears that these two cases were decided in the District Court in favor of the intervenor, but on appeal to the court of respondents, that judgment was reversed, and one rendered in favor of the plain- tiffs.

Relator assigns as error on the part of respondents, the following, to-wit:

1st. In holding that the plaintiffs are entitled to a lien and privi- lege as material men on the court-house of Natchitoches parish, for materials used therein, the contracts for same having been entirely made and executed, and the property delivered in a State different

from Louisiana, and whose laws accord no lien to material men who furnish material to public buildings, on the ground that same is contrary to public policy.

2nd. In holding that plaintiffs had a privilege or lien on said court-house, because a privilege is a right which the nature of the debt or contract gives the creditor to be paid by preference, and, as in this case, the contract was made and executed in Missouri, it must have an effect given to it by the law of that State—a privilege being one of the effects of a contract given in special cases by particular laws, and must be strictly construed, and can not be extended to cases not coming within the special protection of the law of Louisiana.

3rd. In holding that plaintiff's lien had effect on said building, same not having been recorded in the parish where the property is situated, within fifteen days after the debt was contracted, as the law requires.

4th. In holding that notwithstanding a foreign material man who furnishes material in another State and has no lien against the building, has yet a right to serve attested accounts and hold the parish under Revised Civil Code, 2772.

5th. In holding that an assignee of a principal contractor for a valuable consideration made before engagements with material men had been made, and prior to the presentation to the owner of their attested accounts, and prior to the recordation thereof, can not contest with such material men for priority of payment out of the proceeds of the balance due the contractor by the owner.

Relator states that respondents "have made a very full statement of the facts in this case in the opinion filed herewith, which we adopt;" consequently, we need not go outside of the recitals of fact contained in the opinion of the respondent judges, and may safely take the statement therein contained as our guide.

We make the following recapitulation from the opinion of the respondents, to be taken in connection with the foregoing statement of facts made by counsel:

(a) On the 4th day of June, 1895, Gillen contracted with the parish of Natchitoches to build a court-house for the price of $20,-555.00; payable $2500.00 when the foundation was laid, and the remainder as fast as same was produced by a one-mill tax, which had been levied on the property of the parish.

On the 8th day of June following, Gillen gave bond for the comple-

tion of the building in accordance with the contract and specifications which had been recorded on the 4th day of June, previous.    He proceeded with his contract until the 23rd day of June, 1896, when, by reason of his inability to complete his contract, the same was forfeited, and in pursuance of clause 13 of the contract, the job was relet to C. D. Stewart, for completion of the building, in conformity with the contract with Gillen, and for the price and sum of $11,600.00.

On October 17th, 1896, Gillen filed suit in the United States Court against the parish for $14,734.00, as a balance due him, and which resulted in a judgment in his favor for $7,700.    This judgment was rendered on February 1, 1898, and was immediately afterward assigned to the intervenor, and notice given to the parish of Natchitoches.

(b) On July 2d, 1895, P. J. Gillen, contractor, by notarial act, assigned to the Ruston State Bank, intervenor herein, all of his contract rights as collateral security, for a loan of $14,000 in cash, to be made to him to enable him to build and construct said court-house, and to secure the same, subrogated said bank to his privilege as contractor on said building, and authorized it to collect the money due him by the parish, as it became due.

This contract was duly recorded in the parish of Natchitoches on November 13, 1895.

(c)   On November —, 1895, Pullis Bros. Iron Co., in pursuance of a previous contract, furnished Gillen with material, which was used in the construction of the court-house, the balance due on which account is $219.54.

On the failure of Gillen to pay balance due for material, said company caused an attested account to be made out in conformity with the provisions of Article 2772 of the Civil Code, and served it on the parish on February 14, 1896, and caused same to be recorded on May 12, 1896.

On August —, 1895, Gillen contracted with the Illinois Supply and Construction Co., for pressed bricks, which were to be shipped to him from September, 1895, to January, 1896, and which were used in the building of the court-house, with the exception of about $100; the balance remaining unpaid being $563.84.

That company served notice by an attested account on the parish May 26, 1896, and caused same to be recorded on same day.

The two plaintiffs filed suits on September 7th, 1897, against Gillen,

proceeding by attachment, he being a non-resident, and the parish was made party thereto, by garnishment proceeding.

To the suit of Illinois Supply Co., the defendant filed answer and admitted the purchase of the brick, but alleged that a lot of same were rejected by the architect, to the value of $124.00; and in reconvention, he set up a large claim for damages.

To the case of Pullis Bros.' Iron Company, he plead a general denial.

On May 4th, 1898, the Ruston State Bank filed an intervention in each of the foregoing cases, in which it alleged an indebtedness by Gillen to it of over $16,000.00, on account of the foregoing assignment, less a credit of $7,700, it being the amount of the judgment Gillen had obtained against the parish, and which had been transferred to it.

That the contract made with Gillen to supply him with means to construct the court-house proceeded on the theory that he did not, himself, have the means to carry same to completion, and that it was to advance him the necessary means to enable him to construct the building and to pay for the labor and material necessary therefor. It asserted the privilege of the parish to Gillen as contractor, and its assignment and subrogation thereof to his lien and privilege against the building, and as being, thereby, fully authorized to collect the amount due from the parish in pursuance of its recorded claim, and the notice which had been given to the police jury thereof.

That the moneys which it had furnished Gillen had been used in the construction of said building and in making payments for labor and materials furnished and used in the construction of said court-house, and that it has a valid pledge and lien on said court-house for the reimbursement thereof.

It also makes claim for the sum of $7,700.00, the amount of judgment against the parish, which Gillen had, likewise, assigned as in the case of the Illinois Supply Company.

And, finally, intervenor claims, that its assignment from Gillen was recorded long anterior to the furnishing of material by the plaintiffs. and that they had full notice of same; and, consequently, it is entitled to be paid in preference to them.

In other words, we have for consideration the proposition, that the intervenor is entitled to preference in payment from the parish, by virtue of its contract of assignment with subrogation from Gillen as

contractor, over the material men who furnished materials which were used in the building of the court-house.

The foregoing statement of facts discloses, that the assignment from Gillen to the bank was made on July 2nd, 1895, and recorded November 13, 1895. That material was furnished by Pullis Bros. Iron Company, on November —, 1895, in pursuance of a previous agreement, the date of which is not given, and that it caused an attested account to be made out and served on the police jury on February 14, 1896, and same was duly recorded on May 12, 1896.

That material was furnished by the Illinois Supply and Construction Company in August, 1895, and an attested account was made out and served on the parish on May 26, 1896, and recorded on the same day.

Therefore, we have it clearly established by the record that the assignment from Gillen to the bank was made and recorded prior in date to contracts having been made by Gillen with Pullis Bros. Iron Company to furnish materials, and, necessarily, used in the construction of the court-house; and that said contract of assignment was prior in date to the contract between Gillen and the Illinois Supply and Construction Company to furnish materials, though not recorded until a month or two afterwards.

The respondents make the following presentation of the intervenor's claim:

That it is entitled to be paid by preference to plaintiffs, out of the amount due on the court-house by the parish, for the reasons:

1st. That it has a written pledge for money actually used for paying labor and material used in said court-house, the assignment having been recorded before the plaintiffs furnished any material.

2nd. That plaintiffs have no privilege whatever against said building as furnishers of material, and the amount due Gillen should be decreed to be paid intervenor first, as holding a pledge on same, as well as a lien on the building; said plaintiffs' contracts for furnishing material being Missouri contracts, whereas by the constitution and laws of that State, no lien or privilege attaches to public buildings in favor of material men.

Further, respondents return that the plaintiffs' response to the intervention is, among other things, that under the contract, Gillen, as contractor, was required to furnish bond and security, and that the stockholders of the bank, intervenors, became his sureties, and that

they acted for and in behalf of the bank; and, therefore, the bank is estopped from competing with plaintiffs out of the amount to be paid for the courthouse.

It appears from the opinion, that the demand of the Southern Terra Cotta Works was rejected, and the claim of the intervenor for $7,700, as the amount of the judgment Gillen had transferred to it, was recognized.

In this suit, the controversy is simply one between the intervenor and the two creditors claiming for material furnished as to the right of priority of payment.

The first question for examination is, whether the plaintiffs had a lien on the court-house as the furnishers of materials used in the building.

On this proposition the opinion of the court propounds these questions:

"*First.* Are the plaintiffs entitled to a lien on the courthouse, as furnishers of material used in the building, the contracts for the same having been made in foreign States, whose laws accord no lien to material men who furnish material used on public buildings?

"*Second.* (Have) such material men (the right) to serve attested accounts on the owner of the building, as provided by Article 2772 of the Civil Code, and (is it) the duty of the owner to retain the amount (thereof) for the benefit of the person so furnishing the material?

"*Third.* Has an assignee of the contractor before the furnishing of said material, and prior to the presentation to the owner of the attested accounts, the right to contest with such material men for priority of payment from the proceeds of the balance due the contractor by the owner?

The respondents declare that the Article 2772 of the Civil Code is plain and unambiguous, and accords the same privilege to furnishers of material to be used in the construction of a building, as is given to the contractor; but that the contention of intervenor's counsel is, that the plaintiffs are not entitled to the lien of material men, for the reason that the contract for same was made in the State of Missouri, whose laws do not permit liens on public buildings.

It is conceded that the laws of Missouri where the contracts were *apparently* made, do not recognize such liens on public buildings.

"Intervenor's contention on this point is based on the well known principle, that sales made in States whose laws do not recognize

vendor's privileges, do not carry such into other States (to which) the property is subsequently removed.

"The vendor's lien and privilege pertains to the *nature* of the contract, and can only be enforced in this State upon movables, according to the *lex loci contractus;* provided, always, that we have by the *lex fori* the remedy which is invoked.

"The case is entirely different with reference to a contract for material, made in a foreign State. The lien accorded by our laws in favor of material men is purely *statutory,* and has no relation to the *original nature* and character of the contract. The lien attaches by reason of the *use* of the material in the construction of the building, and does not depend upon any contract between him and the owner.

"Cohn vs. Hager, 30 Ark., 28; Lumber Co. vs. Gottschalk, 81 Cal., 641; 22 Pac., 860; cited by Boisat on Liens, Sec. 247.

"It is the *destination and use* of the material in the erection and construction of the building that confers the privilege and this *incident* does not adhere in the original contract, but is *limited* and *fixed* by the *use* of the material. The privilege attaches to public buildings in this State. Schwartz vs. Saiter, 40 Ann., 264.

"Our conclusion is, that the right of lien must be tested by the laws of this State, where the work is done, or the material used. Any other view would lead to the most manifest injustice, and would be wholly subversive of the humane theory and policy of our laws.

"This construction is not only sanctioned by the plain letter of the code, but is in harmony with the construction placed on like statutes by the courts of other jurisdictions."

Counsel for the plaintiffs in their brief, put the proposition this way:

"The main issue in the case is, whether the Ruston State Bank claiming merely as assignee of Gillen, the contractor, and standing in his shoes, can take the money due by the parish to Gillen for building the court-house by preference over material men to whom Gillen is indebted, for materials used in said court-house, and this too, when it does not appear that the bank ever notified the parish authorities of the assignment—the material men, though, having duly notified the parish of their claims, as reqiured by C. C., 2772, and having also attached the money in the hands of the parish by garnishment process."

A careful scrutiny of the opinion of the respondents and their statement of the pleadings, fails to disclose that any point was made to

the effect that the parish did not have notice of Gillen's assignment to the bank; on the contrary, the general tenor of the discussion leads us to the conclusion that the parish had been duly advised thereof.

There is nothing in the statement of facts by the respondents to show at what particular date these supplies of materials were contracted for, nor when they were used in the building; but it does appear therefrom that the contracts made between the plaintiffs and Gillen were entered into in the State of Missouri, and that the materials were subsequently transported to Louisiana, and used in the building.

Counsel for the plaintiffs suggest as an estoppel against the claim of the intervenor that the "assignment made by Gillen to the bank must have been set aside, for, in October 17, 1896, Gillen brought suit in the federal court in his own name and on his own acocunt, against the parish for the balance due him on the building contract."

But the fact disclosed by the record is, that judgment was obtained on that claim, and same was immediately assigned to the intervenor.

Instead of that transaction evidencing any abandonment of the contract of assignment, it seems to us to confirm it. The contractor assigned to the bank his entire claim against the parish as collateral security for funds advanced, and he was, in duty, bound to collect from the parish the amount due him, as the parish had declined to pay, and had set aside his contract.

Under this state of facts, the bank was powerless to collect from the parish, and its rights could only be protected by Gillen's suit and judgment.

We do not understand the intervenor's counsel to claim that the bank had any lien or privilege upon the building for monies advanced to pay laborers, or for material used; on the contrary, we understand that the claim of the bank is purely derivative, and rests upon an assignment made by the contractor with subrogation.

In other words, that the bank is seeking to enforce the lien and privilege of the contractor against the building whose lien and privilege are undoubted.

On this hypothesis, the question in controversy is, whether the plaintiffs as material men shall be paid in preference to the claim of the contractor, which has been assigned to the bank.

All parties in this case assert liens and privileges against the courthouse building, and the building alone. There is no question in re-

gard to any of the parties having a lien or privilege upon the ground upon which the building rests. Consequently, the case of Schwartz vs. Saiter, 40 Ann., 264, and McKnight vs. Parish of Grant, 30 Ann., 361, may be left out of view.

The contention of counsel for plaintiffs is—and that which the respondents' court maintained was—that the lien of material men does not attach until the materials are put in the building, and that, for this reason, the place where the contract was made may be left out of view; and also the decisions of the Texas and Missouri courts in support of that proposition.

Counsel for the plaintiffs have discussed these questions very elaborately and interestingly, but, in our view, the issue must be settled and determined by the provisions of the code.

They are as follows:

"Architects, undertakers, bricklayers, painters, master builders, con-
" tractors, sub-contractors, journeymen, laborers, cartmen and other
" workmen employed in constructing or repairing houses. buildings or
" making other works; those who have supplied the owner or other
" person employed by the owner, his agent or sub-contractor, with
" materials of any kind for the construction or repair of an edifice or
" other work, when such materials have been *used* in the erection or
" repair of such houses or other works," have a privilege on immov-
ables. R. C. C., 3249.

The foregoing is supplemented by the further provision, that the
" above named parties shall have a lien and privilege upon the build-
" ing, improvement, or other work erected, and upon the lot of ground
" not exceeding one acre, upon which the building, improvement or
" other work shall be erected." *Ibid.*

This article is found in the chapter which treats *"Of Privileges on Immovables."*

The further provision of law is, that "architects, undertakers, brick-
" layers, master-builders, painters, contractors, sub-contractors,
" journeymen, laborers, cartmen, masons and other workmen em-
" ployed in constructing, rebuilding or repairing houses, buildings, or
" making other works; those who have supplied the owner or other
" person employed by the owner or his agent or sub-contractor, with
" materials of any kind for the construction or repair of his building
" or other works; those who have contracted, in the manner provided
" by the police regulations, to make or put in repair the levees, bridges,

" canals and roads of a proprietor, *preserve their privileges,* only in so
" far as they have recorded, with the recorder of mortgages, in the
" parish where the property is situated, the act containing .the bar-
" gains they have made, or a detailed statement of the amount duly
" attested under the oath of the party doing or having the work done,
" or acknowledgement of what is due to them by the debtor.

"The privileges mentioned in this article are concurrent." Rev.
Civil Code, 3272.

This article occurs in the chapter which treats of *"How Privileges*
*are Preserved and Recorded."*

The further provision is, that "privileges are valid against third'
persons from the date of the recording of the act or evidence of in-
debtedness as provided by law." Rev. Civil Code, 3273.

The further provision is that "no privilege shall have effect against
" third persons unless recorded in the manner required by law in the
" parish where the property to be affected is situated." Rev. Civil
Code, 3274.

From the foregoing provisions we find, that contractors, sub-con-
tractors and persons who have furnished materials to the owner or
other persons employed for the construction of an edifice, have a privi-
lege upon the building "when such materials have been used in the
erection or repair of such houses or other works."

That such privileges are preserved by having them recorded in the
manner required by law. That is, by the registry of the contract con-
taining the bargains that have been made, or detailed statement of
amount due, attested under oath of the party doing the work.

But the law declares that the privileges mentioned—that is to say,
the recorded privileges mentioned—in this article, are concurrent;
that is to say, concurrent *inter se.* The law further declares, that
such privileges are valid against third persons from the date of re-
cording the act.

Therefore, the important question is, whether the intervenor is a
third person in contemplation of the law.

The intervenor's standing in court is precisely the same as that of
a contractor, or of material men who have furnished supplies to the
building.

Just here, it is well to observe that the opinion of the respondent.
propounds this question, to-wit:

"The practical question is, does this assignment have the legal effect.

"of diverting the funds of the contractor, fastened in the hands of "the parish by the material men by service of their attested accounts, "and give the transferee of the contractor the right of payment by "preference?"

And then proceeding to answer that question, the respondents say:

"We take the law to be so well settled, that the assignee of a chose "in action, stands exactly in the shoes of his assignor, succeeding to "all of his rights and privileges, but acquiring no greater right than "his assignor had in the thing assigned, is such a familiar rule of "jursprudence, that it is scarcely necessary to cite cases in support "of its enforcement.        *        *        *        *        *        *        *        *        *

"Now, suppose Gillen was the intervenor in this case, endeavoring to defeat the claims of the plaintiffs, it is clear that the courts would turn a deaf ear to his demands.

"This assignment only confers the right on the intervenor to receive and collect all monies due him, said Gillen, which they (the police jury) may pay on the construction price of said court-house as their (the bank's) interest may appear, as provided by Section 9 of the contract.

"The pertinent question arises: What amount is due Gillen on the construction price of the building? As we have seen that the amount of plaintiffs' claim has been *extra judicially sequestered,* as it were, in the hands of the police jury, under Article 2772 of the Civil Code, they are legally bound to withhold this amount from the total amount due him. Otherwise the parish would be liable for the sums thus due.

"The balance due by the parish to Gillen on account of said contract is liquidated by the judgment of the federal court of $7,700, and from this amount must be deducted *all legal and valid claims* against the court-house."

In our view, the provisions of Article 2772 of the Revised Civil Code clearly establish the position assumed by the respondents; for, the provisions of the code previously cited are, necessarily, subordinated to the special provisions of the article last cited, which is found in the chapter, "Of Constructing Buildings, According to Plots, and Other Works by the Job, and of Furnishing Materials." The provisions of that article are, that "every mechanic, workman or other person doing "or performing any work towards the erection, construction or finding "of any building erected under a contract between the owner and "builder, or other person        *        *        *        whose demand for work and

"labor done and performed towards the erection of such building has not been paid and satisfied, may deliver to the owner of such building an attested account of the amount and value of the work thus performed and remaining unpaid; and, thereupon, such owner shall retain out of his subsequent payments to the contractor the amount of such work and labor, for the benefit of the persons so performing the same."

And a further provision of that article is, that "all the foregoing provisions shall apply to the person furnishing materials of any kind to be used in the performance of any work or construction of any building, as well as the work done and performed towards such building, by any mechanic or workman; and the proceedings shall be had on the account duly attested, of such person furnishing materials, and the same liability incurred by, and enforced against the contractor or owner of such building, or other person, as those provided for work or labor performed.

"If, by collusion or otherwise, the owner of any building erected by contract as aforesaid, shall pay to his contractor any money in advance of the sum due on the contract, and if the amount still due the contractor after such payment has been made shall be insufficient to satisfy the demand made for work and labor done and performed, or materials furnished, the owner shall be liable to the amount that would have been due at the time of his receiving the account of such work, in the same manner as if no payment had been made."

The evident purpose of the legislature was, to furnish a special remedy in favor of mechanics, workmen, and the furnishers of material, whereby they could subrogate the claims of the contractor to the satisfaction of their own claims by preference, either against funds in the hands of the owner, or against the building constructed.

This is made clear by the following provisions, to-wit:

"Workmen and persons furnishing materials, who have contracted with the undertaker, have no action against the owner who has paid him. If the undertaker be not paid, they may cause the moneys due him to be seized, and they are of right subrogated to his privilege." Rev. Civil Code, Art. 2773.

"The payments which the proprietor may have made in anticipation to the undertaker, are considered, with regard to workmen and to those who furnish materials, as not having been made, and do not prevent

them from exercising the right granted them by the preceding article." Rev. Civil Code, 2774.

In our view, these articles of the code are so clear and emphatic, that it is unnecessary to examine the jurisprudence of this State, or that of other States on the question.

Under the provisions of our law, the privilege of a material man springs into existence when the materials have been used in the erection or construction of a building. Nothing is said in the statute with regard to where the contract is made; nor does that appear to be at all material to the issue.

The proof in this case is clear, that the plaintiffs furnished materials to Gillen, contractor, which were used in the construction of the court-house, and that as against the contractor, service of the attested accounts on the parish as owner, subordinated his claim thereto, and likewise that of the intervenor.

Entertaining this view, we are of the opinion that the judgment of the respondent is correct, and that the relator's demand can not be sustained.

It is, therefore, dismissed at his cost.