IBERVILLE PLANTING & MFG. CO., Limited, v. MONONGAHELA COAL CO.

(Circuit Court of Appeals, Fifth Circuit. February 16, 1909. On Rehearing, March 30, 1909.)

No. 1,727.

1. ACTION (§ 22*)—LEGAL OR EQUITABLE—SUIT INVOLVING PRIORITY OF LIENS OR PRIVILEGES.

A suit which involves the recognizing and marshaling of privileges under the laws of Louisiana should be prosecuted on the equity side in a federal court.

[Ed. Note.—For other cases, see ·Action, Dec. Dig. § 22.*]

2. AGRICULTURE (§ 11*)—LOUISIANA STATUTE—PRIVILEGE FOR SUPPLIES FURNISHED TO PLANTATION.

Although a contract for the sale and purchase of coal was made in another state, where it was delivered in Louisiana, and notes taken for the purchase price were there made, and recite that the coal was purchased and furnished for use on a Louisiana plantation, and was so used in harvesting and manufacturing a crop thereon, the seller is within Rev. Civ. Code La. art. 3217, which gives the furnisher of supplies to any farm or plantation a privilege on the crop of the year.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. § 18; Dec. Dig. § 11.*]

3. AGRICULTURE (§ 11*)—LOUISIANA STATUTES—PRIVILEGE ON CROP.

Act No. 66, p. 114, Laws La. 1874, providing for the making and recording of contracts, giving a lien or privilege on the crop of a farm or plantation for advances or supplies furnished for the planting, cultivating, and harvesting of such crop, covers no further sum than that named in the contract, and for additional advances or supplies furnished the creditor stands on the same footing as other furnishers of supplies, and must look to Rev. Civ. Code La. art. 3217, for a privilege.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. § 18; Dec. Dig. § 11.*]

4. SUBROGATION (§ 23*)—LOUISIANA STATUTES—PRIORITIES BETWEEN PRIVILEGED HOLDERS.

The fact that money advanced by the holder of a factor's contract privilege on a crop under Act No. 66, p. 114, Laws La. 1874, was used by the borrower in paying off superior liens on the crop, does not subrogate the factor to the rights of such superior lienholders as against others having privileges, in the absence of any conventional transfer of such liens; but where such factor, to protect its privilege on a consignment of sugar to it from the crop, directly paid off the claims of laborers having a superior privilege and took possession of the sugar, it was within the protection of Rev. Civ. Code La. art. 2161, which provides that "subrogation takes place of right for the benefit of him who, being himself a creditor, pays another creditor whose claim is preferable to his by reason of his privileges or mortgages," and is subrogated to the laborers' privileges as against other lien claimants.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 60; Dec. Dig. § 23.*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The Monongahela Coal Company brought suit on the law side in the court below for the recovery of the balance due upon two promissory notes made by one A. V. Robertson, for the price of two boat loads of coal sold ·and delivered

at his Grand Bay Plantation, in the state of Louisiana, and used in the manufacture of sugar and molasses produced from cane grown upon said plantation in the year 1898. The amount sued for was $4,436.18, with interest from July 14, 1898, at the rate of 6 per cent. per annum until paid. And the plaintiff, alleging that it had a lien and privilege upon the crop of sugar and molasses produced on said plantation that year for the amount of its demand, obtained a writ of sequestration, by virtue whereof certain sugars were seized and held by the marshal to satisfy the plaintiff's claim.

The Iberville Planting & Manufacturing Company, Limited, intervened in the case, claimed a lien and privilege on the sugars seized, denied that the plaintiff had any privilege thereon, and prayed for leave to bond the seizure, which was allowed, and the sugar seized was delivered by the marshal to the intervener, upon the execution of the required bond.

Thereafter the case was litigated between the plaintiff and intervener. Trial by jury was waived by stipulation in writing, a trial had by the court, and judgment rendered in favor of the plaintiff and against the intervener.

The court made a finding of facts as follows:

"Monongahela Coal Company vs. A. V. Robertson, Iberville Planting & Manufacturing Company, Interveners.     No. 26.

"From the record and the evidence, oral and documentary, I make the following findings of fact, the basis of my judgment entered in the cause, and upon which facts so found there arises the following questions of law.

"(1) Was the contract entered into between A. V. Robertson, the defendant, and the Monongahela Coal Company, of West Virginia, for the purchase of coal, a Pennsylvania contract, governed by its laws, or was it a Louisiana contract, carrying with it the privileges accorded by the law of Louisiana to the furnishers of supplies for the cultivation of plantations?

"(2) If it should be held in the reviewing tribunal that it was a Louisiana contract, then the further question for review or error would be whether the factor, in paying privileged claims superior to that of the furnisher of supplies, becomes legally subrogated to the claim thus paid, with the privilege of payment out of the proceeds of the crop by priority, where the privilege ranks the furnishers of supplies; or does the payment of said ranking privileged charges by the furnisher of supplies have the effect of reducing the higher character of the privilege to that accorded by law to the furnisher of supplies?

"The history of the transaction between the Monongahela Coal Company and A. V. Robertson, and of the Iberville Planting & Manufacturing Company and Robertson & Eiseman, are sufficiently set forth in the opinion delivered by me, to a correct appreciation and application of the law to the facts hereinafter specifically found.

"1. (a) The Iberville Planting & Manufacturing Company, intervening in this cause, is a corporation created under the laws of the state of Louisiana, with its domicile in the parish of Iberville, in this state, and doing a planting and manufacturing, furnishing and supplying business to plantations in the state of Louisiana; that A. V. Robertson, the defendant in the cause, was at the time of the institution of these proceedings, for some years prior thereto, and presently is a citizen of the state of Louisiana.

"(b) The Monongahela Coal Company, the plaintiff in this action, was, at the time of the business transactions between itself and A. V. Robertson (and out of which business transactions the notes herein sued upon were given), a corporation created under the laws of West Virginia; that as a corporation it did not have established in Louisiana a branch office, nor was it exercising any of its rights or corporate franchises in this state; that L. E. Jung was at the time of the transactions with the Monongahela Coal Company and A. V. Robertson occupying the position of soliciting agent for said Monongahela Coal Company for the sale of its products, without right or authority to close or conclude any transactions for or on behalf of said Monongahela Coal Company; that the agency of said L. E. Jung was limited to soliciting orders, and that all orders secured by him for the purchase of the product of said Monongahela Coal Company, and particularly the order of A. V. Robertson for the purchase of two boat loads of coal of the Monongahela Coal Com-

pany, for which the notes herein sued upon were given in payment, had to be, and were as a matter of fact, submitted to the Monongahela Coal Company and its executive officers for acceptance or rejection; and that said submission of L. E. Jung of the tentative offer of A. V. Robertson for the purchase of two boat loads of coal from the Monongahela Coal Company was as a matter of fact, and as appears by the records and minute entries of the directors of the Monongahela Coal Company, submitted by L. E. Jung to the officers of said Monongahela Coal Company in the state of West Virginia, and was then after corporate action by said Monongahela Coal Company in the state of West Virginia an offer made and accepted between the Monongahela Coal Company and A. V. Robertson; and that when said offer was so made and accepted, and the said A. V. Robertson was notified thereof, and the delivery was made to him of the two boat loads of coal purchased as aforesaid, the said coal having been intrusted to L. E. Jung for delivery to A. V. Robertson, and which boat loads were described as '2 boats of coal O'Neil 329 containing 10,321 barrels, O'Neil 312 containing 10,194, or an aggregate of 20,515 barrels at 26 cents per barrel $5,436.48,' the said A. V. Robertson, in payment of the purchase price thereof, under the circumstances hereinbefore recited, executed and delivered his obligations payable to the Monongahela Coal Company of West Virginia, and which obligations are described in the petition herein sued upon, and contain the clause, 'being for the price of coal purchased for Grand Bay Plantation, in the parish of Pointe Coupee,' and payable in the city of New Orleans; that upon the two notes herein sued upon $1,000 was paid, leaving a balance due on said obligations of A. V. Robertson to the Monongahela Coal Company of West Virginia of the sum of $4,436.48.

"The two boat loads of coal were delivered at Robertson's plantation in the latter part of June, 1898. The acceptance of the Monongahela Coal Company of Robertson's proposition for the purchase of the two boat loads of coal aforesaid was made in Pennsylvania on March 11, 1898, qualified by the condition, 'deliveries to be subject to water.' There is neither indication nor proof that the coal delivered to Robertson was in the state of Louisiana on March 7, 1898, when the proposition to purchase was made, nor on March 11, 1898, when the Monongahela Coal Company accepted Robertson's proposition and sold him the two boat loads of coal hereinbefore referred to. From the condition embodied in the acceptance of the proposition that the delivery of the two boat loads of coal was to be 'subject to water,' I infer that the coal sold and intrusted to L. E. Jung for delivery to A. V. Robertson was not in the state of Louisiana at the time of either the proposition to purchase or the acceptance thereof by the Monongahela Coal Company.

"The record does not disclose where the coal contained in the two boats was measured, and there is no proof in the record that the coal was measured in the state of Louisiana, either upon its arrival in this state, or upon its delivery to A. V. Robertson. It may be well, in the absence of proof to the contrary, the coal was measured at the point of shipment. It was understood, however, that the coal was to be delivered to Robertson by the Monongahela Coal Company in the state of Louisiana, and it was so delivered by L. E. Jung, who was intrusted with it by the Monongahela Coal Company to make delivery.

"The coal, the purchase price of which is represented by the obligations herein sued upon, was used by A. V. Robertson on his plantation to manufacture a crop of sugar for the season of 1898, and upon which crop of sugar so manufactured the said Monongahela Coal Company in these proceedings asserts a privilege under the laws of Louisiana as a furnisher of supplies. It nowhere appears in the record that in the submission of A. V. Robertson's proposition to the Monongahela Coal Company, and the action of the Monongahela Coal Company in accepting said proposition, that they were advised or informed that A. V. Robertson was conducting a sugar plantation in this state, or that they had any information or knowledge that said coal sold to A. V. Robertson was to be used to manufacture sugar upon the plantation of which A. V. Robertson was the proprietor and operator; but Jung knew Robertson was a sugar planter, though it is not shown that he communicated this knowledge to the Monongahela Coal Company.

"(c) That the present suit of the Monongahela Coal Company against A. V.

Robertson was filed in the United States Circuit Court on January 7, 1899. That at the time the notes sued upon were executed, to wit, July 14, 1898, the acts of pledge from Arthur V. Robertson to the Iberville Planting & Manufacturing Company for advances to cultivate the crop on Nina and Grand Bay Plantations for the year 1898, which acts of pledge were given under the factor's act, No. 66, p. 114, of 1874, were of record in the clerk's office of the district court of Pointe Coupee parish. The said two acts, bearing dates respectively of February 15, 1898, and May 11, 1898, are made part of this finding. That on the day the suit was filed, to wit, January 7, 1899, L. E. Jung, describing himself as the representative of the Monongahela Coal Company of West Virginia, caused to be placed of record in the clerk's office of the district court of the parish of Pointe Coupee his affidavit, in which he describes the two notes here sued upon, and asserts on behalf of the Monongahela Coal Company a lien and privilege upon the crops manufactured upon said Nina and Grand Bay Plantations for the seasons of 1898 and 1899.

"(d) That there was no proof made, nor is there any evidence in the record, that L. E. Jung, the soliciting agent of the Monongahela Coal Company, was authorized, empowered, or directed on behalf of said Monongahela Coal Company to assert or claim any right, privilege, or lien for or on behalf of said company, or to assert or claim on its behalf a lien and privilege upon the crop manufactured on said Nina and Grand Bay Plantations, as furnishers of supplies. Nor is there any evidence in the record that the action of L. E. Jung has ever been approved by the Monongahela Coal Company in the assertion by L. E. Jung without prior authority of a lien and privilege on their behalf, and that the affidavit of January 7, 1899, in which the said L. E. Jung asserted on behalf of said Monongahela Coal Company a lien and privilege upon the crops manufactured, was made without the knowledge or subsequent ratification of the Monongahela Coal Company, except that said company and its liquidators have prosecuted this suit after being informed thereof by Mr. Benedict, its counsel.

"2. (a) The planting partnership of Robertson & Eiseman entered into a contract with the Iberville Planting & Manufacturing Company on the 15th day of February, 1898 (which contract was under the factor's act of 1874), by which the Iberville Planting & Manufacturing Company agreed to and did advance them, for the purposes recited in said act, the sum of $15,000, and they secured to the Iberville Planting & Manufacturing Company, under the act aforesaid. a crop lien. The act referred to is made part of this finding as though set out in extenso. It was promptly recorded in the clerk's office of the district court in the parish of Pointe Coupee, where the plantations operated by Eiseman & Robertson were situated.

"(b) On the 11th of May, 1898, Robertson & Eiseman, finding it necessary to have additional funds for the purpose of cultivating and operating said plantations, obtained additional advances from the Iberville Planting & Manufacturing Company and secured the additional advance, to wit, the sum of $4,000, by an act which was duly passed and recorded on the 11th day of May, 1898. The funds so advanced were also secured by a crop lien under the factor's act of 1874. This act is made part of the findings herein.

"(c) In both the acts referred to in the foregoing findings, the following declaration is made and was of record from the date of the recordations respectively of both acts:

"'It is finally agreed that said Arthur V. Robertson and Cassius M. Eiseman shall enter into no other contract or agreement which would operate a lien or privilege on or pledge and pawn of said crops in favor of any other person or persons on said crops for the year 1898, or the proceeds thereof.'

"There has been no evidence produced, nor has the fact been established, that the condition above recited was at any time waived by the Iberville Planting & Manufacturing Company, or that the said company at any time expressly authorized or consented to the purchase by Robertson & Eiseman, or either of them, of any supplies for the cultivation or operation of said plantations, and which could in any manner affect their privilege as factors, whether under the act of 1874 or the general law in such cases made and provided. I find that said clause applied only to the securing of the sums

advanced under said contracts, which sums are paid in full under the judgment.

"(d) In addition to the $19,000 advanced by the Iberville Planting & Manufacturing Company to Eiseman & Robertson under the contracts referred to in findings (a) and (b), and this exclusive of interest on said sum of $19,000, the Iberville Planting & Manufacturing Company advanced from time to time for the cultivation, harvesting, manufacturing, and marketing of the crop raised by Robertson & Eiseman on Nina and Grand Bay Plantations the gross sum of $38,635.29; that of the sum so advanced and paid out by the Iberville Planting & Manufacturing Company for the cultivation, harvesting, manufacturing, and marketing of the crop, and to protect the same against privileges of a higher order in rank than that of furnisher of supplies or factor's privilege, there was paid by the Iberville Planting & Manufacturing Company to Robertson & Eiseman the following sums of money, and they used the money advanced to them to pay the claims of the persons hereinafter named, and for the amounts which were justly due and owing, to wit:

"(1) F. O. Lieux, the lessor of Grand Bay Plantation, for the year 1898, received from the Iberville Planting & Manufacturing Company, rent of said plantation to Eiseman & Robertson, the sum of $2,000.

"(2) Taxes paid by the Iberville Planting & Manufacturing Company on said plantation, and insurance premiums paid on the sugar house of said plantation, which under the terms of the contract of lease were to be paid as part of the rental of said plantation, the sum of $713.83.

"(3) The Iberville Planting & Manufacturing Company paid to the sheriff of the parish of Pointe Coupee the sum of $277.45, being the tax levied by the state and known as the produce tax, for the year 1898–99, $277.45.

"(4) The Iberville Planting & Manufacturing Company paid to Gremillion & Co. the sum of $2,119, being the purchase price of the raw cane which was subsequently manufactured into sugar by Robertson & Eiseman, and for the payment of which purchase price of cane Gremillion & Co. had a privilege superior in rank to that of the factor or furnisher of supplies, $2,119.

"(5) The sugar sequestered under the writ of the Monongahela Coal Company owed to the laborers on the plantation the sum of $5,922.95, a claim superior in rank to that of the factor's lien and the furnisher of supplies. The laborers threatened the seizure of the sugars, and were asserting their superior privilege thereon for the payment of the debt which was due them. The Iberville Planting & Manufacturing Company, in order to protect their privilege as factors, directed their agent, F. O. Lieux, to draw upon it for the amount of said claims, so as to relieve said sugars from the threatened seizure, and the claims aggregating the amount aforesaid, to wit, $5,922.95, were paid by the Iberville Planting & Manufacturing Company as against the consignment of said sugars to it, and the amounts so paid were charged on the books of the Iberville Planting & Manufacturing Company to Robertson & Eiseman on the crop cultivated, manufactured, and shipped for the year 1898, $5,922.95.

"The aggregate of items 1 to 5, inclusive, represents eleven thousand and thirty-three and $23/100$ dollars ($11,033.23).

"The privilege accorded by law to each of the above-enumerated items is superior in rank to the factor's privilege or that of the furnisher of supplies.

"I find as a matter of law that the advance by the Iberville Planting & Manufacturing Company of the amounts aforesaid, did not operate a legal subrogation of the privilege accorded by law to the respective claims. I find as a matter of law that the advance of money which was used to pay said claims by the Iberville Planting & Manufacturing Company had the effect of reducing the privilege securing said claims from its superior rank to that enjoyed by the factor or furnisher of supplies, who advanced the funds to pay the same, and that, there being no conventional transfer of the debt by those whom the money was paid and no conventional subrogation to the privilege, their superior rank in the order of payment was lost, and the Iberville Planting & Manufacturing Company can only claim as against the crop proceeds the reimbursement of the sum so advanced, and for the sum advanced are only entitled to the privilege of factors or furnishers of supplies.

"I find that the entire proceeds realized from the sale of the crop of Nina and Grand Bay Plantations for the years 1898 and 1899 was $52,863.85.

"From the gross proceeds realized from the sale of the crop there is to be primarily deducted the advances made by the Iberville Planting & Manufacturing Company of the sum of $19,000, to which is to be added $1,133.21, the accumulated interest under the contracts referred to in these findings. The sum of $20,133.21 deducted from $52,863.85, the gross proceeds of the crop, leaves a balance of $32,730.64, to be held subject to special and general privileges.

"If the item referred to in finding (d) secures recognition as privileged debts superior in rank to the factor or furnisher of supplies, and that resulting from the payment by the Iberville Planting & Manufacturing Company there was a legal subrogation not only to the debt, but to the privilege, then the net amount realized from the crop for distribution between the Iberville Planting & Manufacturing Company and the Monongahela Coal Company, as factors and furnishers of supplies, would be $21,697.41.

"If, on the other hand, it should be held that there was no legal subrogation of the privilege, and the debts aforesaid were only entitled to the privilege of factors and furnishers of supplies, then there would be for distribution between the Iberville Planting & Manufacturing Company and the Monongahela Coal Company the sum of $32,730.64. I find that the moneys advanced by the Iberville Planting & Manufacturing Company were used in the cultivation, harvesting, manufacturing, and marketing of the crop of Nina and Grand Bay Plantations for the year 1898-99.

"I find that the coal purchased by A. V. Robertson from the Monongahela Coal Company on March 11, 1898, was wholly used to manufacture in part the crop of Eiseman & Robertson on Grand Bay Plantation for the year 1898

"I further find that the respective debit and credit of the Weis and Union Bank transaction is compensated and offset and in no manner affects the factor's account between the Iberville Planting & Manufacturing Company and Robertson & Eiseman, and may be entirely disregarded in ascertaining and determining the moneys advanced by the Iberville Planting & Manufacturing Company for the crop of 1898 and the proceeds realized from the sale of said crop.

"In my written opinion I have fully stated the facts and the legal propositions considered and decided, and I refer to and adopt said opinion as a statement of the facts and legal questions involved in this case. The foregoing statement of facts is also correct in all particulars where not inconsistent with the statements contained in my opinion.

"[Signed]  Eugene D. Saunders, Judge.
"July 24, 1907."

B. F. Jonas and Henry L. Lazarus, for plaintiff in error.

W. S. Benedict, Jessy Benedict Gessner, J. D. Rouse, Wm. Grant, and Wm. B. Grant, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). This is a suit involving the recognition and marshaling of privileges, and should have been prosecuted on the equity side of the court and for review brought here by appeal instead of writ of error; but as the parties made no objection in the court below and make none here, and as procedure in the case was made possible by waiver of the jury, we will pass upon the case as made by the parties in the court below. But see Gravenberg v. Laws, 100 Fed. 1, 40 C. C. A. 240.

We have deemed it advisable to give the full finding of facts by the trial judge to show the pertinency of our remarks and conclusions. As the finding seems to be complete and in no wise inconsistent with the written opinion referred to in the last paragraph thereof, and as

no objection is made by either party, the last paragraph may be treated as surplusage.

The first contention of the plaintiff in error is that the Monongahela Coal Company has no privilege as a furnisher of supplies, because the contract of purchase for the coal is a Pennsylvania contract, and the coal itself was sold by the coal company to Robertson without reference to the Louisiana law with regard to privileges, and even without reference to its use on Robertson's plantation. The original contract for the sale of the coal bears many of the earmarks of a Pennsylvania contract, but the subsequent facts in the case show that the written contracts upon which suit is brought, to wit, the notes, were made in Louisiana, and said notes specified that the coal was purchased for Grand Bay Plantation in the parish of Pointe Coupee, and the coal was actually furnished to said plantation and was used thereon for the harvesting of the crop in 1898. Under these circumstances, we think it clear that the furnisher of the coal is within the Revised Civil Code of Louisiana, art. 3217, giving the furnisher of supplies to any farm or plantation a privilege on the crop of the year. See London Assurance v. Companhia De Moagens, 167 U. S. 160, 17 Sup. Ct. 785, 42 L. Ed. 113, and Pullis Bros. Iron Co. v. Parish of Natchitoches, 51 La. Ann. 1377, 26 South. 402. While the last case cited deals with mechanics' liens, the reasoning and conclusions are applicable to the case in hand. The furnisher's lien under Rev. Civ. Code, art. 3217, is a statutory lien depending on the destination and use of the supply. Where the preliminary contracts looking to such use are made is apparently immaterial.

The next contention is that the Iberville Planting & Manufacturing Company, having contracted with the owners under Act No. 66, p. 114, Laws La. 1874, to furnish supplies for the Nina and Grand Bay Plantations for planting, cultivating, and harvesting crops grown thereon, and covenanted for a privilege and pledge and pawn of said crops to cover all advances, and the same having been recorded according to law, the said Iberville Planting & Manufacturing Company has a superior lien over other furnishers of supplies for the full amount advanced in the planting, cultivating, harvesting, and marketing of crops on said plantations, although the same exceeds the amounts stipulated in their said contracts as the maximum sum to be advanced; and, as against other furnishers of supplies, reliance is had on the clauses:

"The said Iberville Planting and Manufacturing Company, Limited, shall have the exclusive right to apply the net proceeds of the sale of all of the crop shipped, and all payments of money made to it, to the payment of any indebtedness secured or unsecured which may be due now, or which may hereafter become due to it, by the said Robertson and the said Eiseman, upon open account or otherwise, or to the debt secured and intended to be secured by these presents, according to its view of the exigencies of the case; and that such application may be made at such time and in such manner as said company may elect, and that no application of such proceeds of sale or money to the payment of any debt or open account which may at any time be due to the said company by the said Robertson and Eiseman shall impair, lessen or prejudice the debt secured or intended to be secured by these presents or the security herein and hereby provided for."

"Robertson and Eiseman shall enter into no other contract or agreement which would operate a lien or privilege on or pledge and pawn of said crops

in favor of any other person or persons on said crops for the year 1898, or the proceeds thereof."

The contention is not well founded. Under the contracts in question the Iberville Planting & Manufacturing Company was under no obligation to advance beyond the amount stipulated, and the pledge and pawn under act of 1874 covered no further sums than the limits named in the contracts. Other furnishers of supplies were not bound beyond recorded contracts. For supplies furnished the plantations beyond the contracted maximum stipulated in the contracts, the Iberville Planting & Manufacturing Company stands on the same footing as other furnishers of supplies, and must look to article 3217, Rev. Civ. Code, for a privilege. See Minge & Co. v. Barbre, 51 La. Ann. 1285, 26 South. 180.

In National Bank of Commerce v. Sullivan, 117 La. 181, 41 South. 480, the case relied on by the plaintiff in error, the privilege allowed was under article 3217, Rev. Civ. Code, and, Minge & Co. v. Barbre having been cited to defeat a privilege, the court said:

"The case relied on is, however, inapplicable, since, from the face of the act of pledge here presented, it is evident that the parties contemplated other advances to be otherwise secured, the limit of which is not fixed."

The last contention is that, in addition to the superior lien acquired by the Iberville Planting & Manufacturing Company under their contract for the maximum sums stated therein, it is entitled to a subrogation to certain superior liens originally held by other parties and paid by the said company to protect their privilege as factors. According to the finding of facts, the lessor's lien, the insurance premiums, the taxes, and the sums due for cane purchased, all privileged over the factors, were paid by the Iberville Planting & Manufacturing Company to protect their privilege as factors, but paid to Robertson & Eiseman, and they used the money so advanced to them to pay the claims which were justly due and owing. There is no finding as to when the Iberville Planting & Manufacturing Company paid the money to Robertson & Eiseman, nor as to when the latter paid the privilege holders, nor as to whether these amounts formed a part of the $19,000 for which the company is given a superior lien. The finding of facts is also silent as to whether there was any conventional transfer or subrogation made or attempted. Under these circumstances, and as to these items, the case seems to be within the rule declared in Shaw & Zuntz v. Knox, 12 La. Ann. 41, and Shaw v. Grant, 13 La. Ann. 52, and the claimed subrogation should be denied.

As to the laborers' privilege on the entire crop, and particularly on the sugars sequestered in this case, the finding is:

"The sugar sequestered under the writ of the Monongahela Coal Company owed to the laborers on the plantation the sum of $5,922.95, a claim superior in rank to that of the factor's lien and the furnisher of supplies. The laborers threatened the seizure of the sugars, and were asserting their superior privilege thereon for the payment of the debt which was due them. The Iberville Planting & Manufacturing Company, in order to protect their privilege as factors, directed their agent, F. O. Lieux, to draw upon it for the amount of said claims so as to relieve said sugars from the threatened seizure, and the claims aggregating the amount aforesaid, to wit, $5,922.95,

were paid by the Iberville Planting & Manufacturing Company as against the consignment of said sugars to it, and the amounts so paid were charged on the books of the Iberville Planting & Manufacturing Company to Robertson & Eiseman on the crop cultivated, manufactured, and shipped for the year 1898, $5,922.95."

These facts bring the payment of the laborers' privilege within the letter and spirit of the Code on legal subrogation (article 2161, Rev. Civ. Code), to wit:

"Subrogation takes place of right for the benefit of him who being himself a creditor pays another creditor whose claim is preferable to his by reason of his privileges or mortgages."

The Iberville Planting & Manufacturing Company was a creditor. To protect its privilege it paid the laborers whose privilege was preferable. It paid direct, and, on payment, took possession of the sugars in question. That the amount paid was charged on the books of the Iberville Company to Robertson & Eiseman on the crop cultivated, manufactured, and shipped for the year 1898 is wholly immaterial as affecting the subrogation, but it may be noticed that such charge was proper, and, in fact, called for, as the Iberville Planting & Manufacturing Company was bound to account for the entire crop of 1898.

The facts do not show a case of payment by a factor of debts due by his principal in the ordinary course of business, and therefore Shaw & Zuntz v. Knox, 12 La. Ann. 41, and Shaw v. Grant, 13 La. Ann. 52, do not apply. In Zeigler v. His Creditors, 49 La. Ann. 187, 21 South. 684, the right of subrogation was recognized for an ordinary creditor, and in the opinion legal subrogation is fully discussed, and the conclusion is:

"We think reason and authority, as well as the text of the Code, sustains our opinion that gives the bank, in this case the creditor of Zeigler, the subrogation to that mortgage, securing the debt the bank discharged."

We are clear that the same may be said as to subrogation of the Iberville Planting & Manufacturing Company to the laborers' privilege, a conceded superior lien. And see Laloire v. Wiltz, 31 La. Ann. 436; Saloy v. Dragon, 37 La. Ann. 71.

It follows that the court below erred in holding that the sum of $32,730.64 was in the hands of the Iberville Planting & Manufacturing Company subject to special and general privileges, as that sum should be reduced by the amount of the laborers' privileges, to wit, the sum of $5,922.95, leaving subject to other privileges the sum of $26,807.69, and from this that he erred in giving judgment in favor of the Monongahela Coal Company for the sum of $3,209.56, instead of the sum of $2,628.75.

The judgment of the Circuit Court is amended by reducing the amount thereof from $3,209.56 to $2,628.75, and, as thus amended, is affirmed.

## On Rehearing.

PER CURIAM. In an opinion recently handed down we assumed that the judgment of the lower court in favor of the Monongahela Coal Company was correctly based on the findings of fact and con-

·clusions of law of the trial judge; but this was a mistake. On the said findings of fact and conclusions of law the Monongahela Coal Company was entitled to a much larger judgment than was given. Under our conclusions of law, we give a correct statement as follows:

According to the "finding of facts" the amount advanced by the Iberville Planting Company are shown as follows:

| | | |
|---|---|---|
| Fixed in the contracts...............................$19,000 00 | | |
| Interest thereon...................................... 1,133 21 | | |
| Additional ........................................ 38,635 29 | | |
| | | |
| Total amount to plantations | $58,763 50 | |
| From this amount is to be deducted | | |
| Preferential claims under contracts.................$19,000 00 | | |
| Interest ........................................ 1,133 21 | | |
| Amount of laborers' claims paid...................... 5,922 95 | 26,056 16 | |

Leaving a balance due Iberville Planting Co., secured by nonpreferential lien.............................................. $32,712 34

The amount due the Monongahela Coal Company is $4,436.48. The total amount of the proceeds of the crop of the Nina and Grand Bay plantations was $52,863.35. Deducting from this preferential liens—contracts, $19,000; interest, $1,133.21; laborers' liens, $5,922.95—leaves the sum of $26,056.16 to be divided pro rata between the Iberville Planting Company on its claim of $32,712.34 and the Monongahela Coal Company on its claim of $4,436.48. The per cent. is 72.163.

As the fund is in the hands of the Iberville Planting Company, the amount due the Monongahela Coal Company is $3,201.49. The erroneous judgment of the Circuit Court in favor of the Monongahela Coal Company was for the sum of $3,209.59, which happens to be within a few dollars of the amount we find to be actually due the coal company. Error in the amount of the judgment not having been assigned, this small difference should not carry costs.

It is therefore adjudged that our former judgment be vacated, and instead that the judgment of the Circuit Court be amended by reducing the amount thereof in favor of the Monongahela Coal Company from $3,209.56 to $3,201.49, and, as thus amended, the judgment of the Circuit Court is affirmed, with costs to be paid by the plaintiff in error.

The petitions for rehearing filed in this case are denied.