No. 10,062.

Moses Schwartz vs. W. S. Saiter.—The New Orleans, Spanish

Fort and Lake Railroad Company, Third Opponent.

A contractor's privilege attaches to constructions and works erected on soil that is dedicated to public use.

A lessee is not responsible for losses that are occasioned by fire, without his fault or neglect.

Although a purchaser who buys, without qualification, an unexpired lease, assumes the obligations of the lessee, yet he is relievable therefrom if he should be deprived by the lessor of the enjoyment of the lease.

The contractor's privilege attaches to constructions and works that have been erected on the leased premises under a contract with a lessee, in the place of others that have been destroyed by fire during the term of the lease, without his fault or neglect.

Schwartz vs. Saiter.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Bernard Titche* and *T. M. Gill* for Plaintiff and Appellee:

1. The privilege of the lessor does not prevent the sale of the things subject to his privilege by an ordinary judgment creditor. 27 Ann. 482; 31 Ann. 870; 31 Ann. 865.
2. The railroad company obtained judgment against Saiter, decreeing the property in question to be Saiter's, subject to its lien; seized and advertised the same as his. They are bound by their judicial averments and actions, and forever estopped from contradicting the terms of their own judgment. 4 Ann. 416; 5 Ann. 18; 26 Ann, 186-7; 27 Ann. 315-16; 14 Ann. 140; 29 Ann. 171, 353; 30 Ann, 1147; 28 Ann. 60-1; 23 Ann. 764.
3. No stipulation between the company and Saiter, to which Schwartz was not a party, can affect Schwartz's right.
4. That the insurance money which the company permitted Saiter to collect, and use *pro tanto*, was not sufficient to restore the property destroyed by fire, can vest no right in the company to claim the works constructed by Schwartz.
5. (a) Questions not raised by the pleadings in the lower court cannot be considered here (C. P- 895), and judgment not prayed for cannot be granted.
   (b) Schwartz's judgment against Saiter imports absolute verity and cannot be collaterally attacked. 38 Ann. 812; 36 Ann, 831, 533; 32 Ann. 896.
   (c) If considered, the judgment will be found valid.
6. (a) Plaintiff waived his peremptory exception and plea in bar by not requiring decisions thereon before going to the merits.
   (b) If not waived, plaintiff having restrained Schwartz from enjoying the lease, cannot profit by its own wrong.
7. (a) Though Schwartz cannot sell the soil, he may sell the buildings and works put upon it by him, and
   (b) Is entitled to the first privilege upon the proceeds of the sale. 30 Ann. 361; R. C. C., 3249.
8. The property in dispute is on a public street, or highway, of the city of New Orleans. 2 Ann. 770; 10 Pet. 662; Dillon on Mun. Corp., XVII.

No presumption from mere lapse of time can be made to support a nuisance which is an encroachment on the public right.

No private occupancy for whatever time, and whether adverse or by permission can vest a title inconsistent with that of the city or the public. Dillon Mun. Corp., Sec. 520, 521, and p. 503, note; 3 Pa. (Penrose and Watts), 253; 1 R. I., 259, and authorities cited, in Dillon Mun. Corp., Sec. 531, note.

The railroad company itself does not assert that the property is on its premises, but on or adjacent to the Spanish Fort grounds.

The title deeds of plaintiff company make no proof whatever of its ownership of the disputed ground.

*Robert Mott* and *Harry H. Hall* for Third Opponent and Appellant.

The opinion of the Court was delivered by

WATKINS, J. This is a third opposition, coupled with an injunction against the sale of certain personal property as that of the judgment debtor.

Schwartz obtained judgment against W. S. Saiter, individually, and as lessee of opponent's property, known as the Spanish Fort, for an

amount due on open account for material furnished and by him employed in the construction of certain buildings at or adjacent thereto, which enclose the machinery for operating the electric light; in building certain cisterns, and laying the foundations for the machinery, etc., with recognition of his contractor's and vendor's lien thereon.

A detailed bill is made a part of the petition, and is referred to in the judgment for particulars of description.

This property was seized under execution—and also Saiter's rights under his lease from opponent—and advertised for sale.

The railroad company makes opposition on the following grounds, substantially, viz :

That it had leased the Spanish Fort and railroad property to Saiter for a term of years, expiring on the 31st of December, 1885 ; and that, at the execution of the lease contract, there were on the premises an electric light boiler, dynamo, pipes, cisterns and other appurtenances, and also a building in which this electric light machinery was contained. That there are now upon the premises similar, if not the same, items of property. That it has a judgment against Saiter for a large balance due on rent, and a lien and privilege on said plant, which primes that of Schwartz.

Subsequently opponent amended its opposition and, in the alternative, asserted ownership of the property and averred Schwartz to be its vendor and warrantor, and that on that account he could not seize it as Saiter's.

It averred that the said lessee had contracted to insure the premises and property leased for its benefit, and restore same in good condition at the expiration of the lease ; that the building containing the dynamo and other machinery was destroyed by fire, and the dynamo and machinery injured thereby, and Saiter replaced the building and repaired the machinery ; and for the repairs, replacement and materials furnished, the seizing creditor claimed a first lien and privilege, and obtained a judgment therefor when he was not entitled to it. That, at the time he furnished materials and did the work, he knew that it was opponent's property and that Saiter was its lessee and gave it no notice, and did not procure its assent thereto ; that his claim is not valid on that account; and said services and materials furnished do not affect the property with a privilege.

It avers that, notwithstanding the electric light machinery, building, etc., are not covered by the judgment, nor included in the sheriff's inventory of property seized, they were included in the seizure and advertisement of sale.

The opponent's injunction forbade the sale of all the property that was seized and advertised for sale, except Saiter's unexpired lease, and it was adjudicated to Schwartz for $125.

At a subsequent stage of the proceedings opponent filed, as a peremptory exception, founded on the law, and as a plea in bar of Schwartz's right to recover on his judgment at all, the following, viz:

That there remains unpaid, on its judgment against Saiter for rent, a balance of $8,000, in addition to repairs, taxes, licenses and insurance premiums due, and Schwartz became bound for the payment thereof, by virtue of his purchase of Saiter's unexpired lease, one of the obligations of which was the return of the property in like good condition as when received—hence his judgment became extinguished by confusion, he having taken the lessee's place in the contract, which imposed the duty on the latter of replacing the property in the condition it was when entered into.

Schwartz, in his answer, denies that the property replaced in the stead of that which was destroyed by fire is situated within the limits of what is known as Spanish Fort, and the contention of his counsel is that it was erected in a public street, or, in what was denominated as a public street of the city, and, as such, dedicated to public use; and therefore opponent is without right, title or lien in the premises.

Schwartz admits his purchase of Saiter's unexpired lease at sheriff's sale, but avers that he was prevented by opponent's injunction from obtaining possession of the leased premises thereunder during its continuance, and from, in any manner, using or enjoying the same, and claims his exoneration from liability for the obligations of the lessee—whatever they may be—on that account.

## I.

It must be borne in mind that the seizure was of *personal* property exclusively, and of Saiter's unexpired lease, which terminated on December 31st, 1885; and that our jurisdiction is restricted, in this character of action, to the property seized and the determination of the rights of the contestants thereto or the proceeds thereof. For this reason it is not our province to decide whether the soil on which the building and electric light plant are situated is a *locus publicus* or not. That question is not, however, a serious one, as our predecessors held that " because the soil, upon which a building is erected, cannot be sold to pay the cost of its erection, it by no means follows that the building itself may not be. The 3249th article of the Civil Code gives the lien ' upon the building *and* upon the lot of ground,' and then proceeds to provide for the case where the lot of ground belongs to an-

other than the party having the work done, and when, therefore, it is not alienable in satisfaction of the debt. We think the spirit of this article requires us to recognize the lien on the building." 30 Ann. 361, McKnight vs. Parish of Grant.

The claim made in that case and recognized was for materials furnished and work performed in the construction of a jail that plaintiff had built on a square of ground that had been dedicated to public use.

In that instance the contractor dealt with the police jury, a public corporation, while in this he dealt with the lessee of a private corporation. In the former the building was erected on a public square, while in the latter it is claimed to have been built in a public street.

There is a complete parallel between the two cases. But, if there is not, it is quite evident that both contestants occupy the same attitude with reference to the enforcement of their respective liens on the property; and that the seizing creditor holds such relation to opponent's title as to preclude his questioning his ownership of the property leased to Saiter—Schwartz having been one of the directors and principal stockholders of the company that conveyed it to the opponent, and acted as its agent in negotiating and consummating the sale. Under this state of facts it would violate equity to permit Schwartz to take advantage of any defect in opponent's title, or avail himself of any possible deficit in the quantity of property sold.

## II.

With regard to opponent's contention that it was the duty of Saiter, under the contract of lease, to replace, at his own expense, the building and machinery that were destroyed or injured by fire; and that he, as lessee, was without right or power to make a contract with Schwartz for their construction, and bind it therefor, it would seem to be sufficient answer to refer to the following clause in the contract, viz:

"And it is expressly understood and *agreed* that the said party of the second part shall be held liable for any damage or loss of any property of whatsoever description, *excepting only* (that destroyed) *by fire*, the acts of the elements, *vis major*, and reasonable wear and tear." This provision of the contract is in exact conformity with the law, which declares that " the lessee is only liable for the injuries and losses sustained through his own fault." R. C. C. 2721.

" He can only be liable for the destruction occasioned by fire, when it is proved that the same happened either by his own *fault or neglect*, or by that of his family." R. C. C. 2723.

There is no averment in the petitions of opposition that the property of the company was injured or destroyed by fire through Saiter's

*fault or neglect;* and if, as alleged, the insurance was paid him, the inference is that the loss was *not* occasioned by his fault or neglect.

There is no force in the contention that the railroad company should be relieved from responsibility, because the lessee gave it no notice of the loss by fire, and of the necessity of replacing the building and machinery, because of its judicial averments of the loss and injury by fire, without any averment that same were occasioned through the lessee's fault or neglect; and because it makes claim to the property put in the place of that which was lost and injured by fire.

It is a matter of no special importance whether or not Saiter collected and used the insurance money and failed to employ it in the replacement and repair of the lost and damaged property, as the effect of the stipulation of the contract on that subject, must necessarily be confined to the parties and cannot affect Schwartz. The company could have protected its lease by having required the lessee to place the insurance policy, as a pledge, in its possession; and, having failed in this, it must suffer the loss sustained thereby.

### III.

The next contention that we shall consider is that raised on the exception and plea in bar.

It is undeniable that the sale of the unexpired term of a lease includes the obligations as well as the rights of the lessee; and that a purchaser, who buys without qualification, obliges himself to discharge his obligations. 37 Ann. 587; 11 Ann. 433; 14 Ann. 213; 17 Ann. 174; 39 Ann. 743, Walker, Syndic, vs. McVean.

But Schwartz alleges that, on the 11th of August, 1885—the day subsequent to the one on which the unexpired term of Saiter's lease was adjudicated to him—the opponent enjoined him from taking possession of said property; that its injunction remained in force until it was perpetuated in January, 1886; that in the meanwhile, the full term of the lease had expired; and that, by the immediate operation and effect of said injunction, he was deprived of the enjoyment of the lease, and must, of necessity, be exonerated from the lessee's obligations.

This assertion is fully borne out by the record. The opponent's injunction precludes its assertion against the purchaser of the implied obligations of the lessee.

### IV.

The contention of opponent to the effect that a contractor, who furnishes materials and constructs a building upon leased premises, in pursuance of a contract with a tenant, has no lien or privilege on

the *property under lease*, is supported by the authorities cited. 18 La. 70, Homan vs. Laurens; 2 R. 66, Sewell vs. Duplessis.

But the 3249th article of the Revised Civil Code contains a provision not found in the corresponding article of the Code of 1825. It is in these words, viz:

" The above named parties, (i. e. architects, contractors, etc.,) shall have a lien and privilege upon the building, improvement or other work erected, etc.,    *   *   *   *   *   *    and if such building, improvement or other work is caused to be erected by a *lessee of the lot of ground*, in that case the privilege shall exist only against the *lease* and shall not affect the *owner*."

We are not aware of any decision of this Court that has ever given an interpretation of this article; but it is reasonable to infer, from the provisions quoted, that the lease contemplated is one of property that is unimproved; that the owner thereof shall not be affected by any construction *subsequently* erected thereon by the lessee, and which was not originally part of the " property under lease ; " and that the contractor who erected it has a privilege thereon as an integral part of the "*lease*."

Antecedent to the revision of the Code in 1870, the contractor had no such privilege. It is not awarded against the *lessee*, but against the *lease*. The quoted paragraph declares that it shall not affect the *owner*.

The employment of these terms clearly indicates its purpose and object to be that the *construction* forms a part of the lease, and that the privilege of the contractor attaches to it. In this manner it could be made effective. But should it be held that such a construction or work became the property of the lessor of the lot of ground; free of the contractor's lien, it would be deprived of all force and efficacy, as nothing applicable to it would remain.

There is a provision in the contract of lease to the effect that, at the *termination* of the lease, all *repairs and improvements* made by the lessee shall become the property of the lessor ; but that " the *buildings and constructions* put upon the property, shall belong to the lessee," etc.

It is, therefore, obvious that, if the constructions under consideration had been intended or designed to replace those lost and destroyed by fire, the lessee would have a seizable interest in them ; hence we must conclude that, inasmuch as the loss by fire was not occasioned by Saiter's fault or neglect, and as he was *not* bound to make their replacement, Schwartz's seizure was justified, and must be maintained to *that extent*.

Schwartz's judgment covers all the property that is mentioned in the

itemized account as having been either constructed or repaired; but we are of the opinion that it should be restricted to the constructions that were erected in replacement of those which were destroyed by fire.

## V.

In respect to opponent's contention that his lessor's lien primes that of the contractor, it is only necessary to cite, in answer, the 3267th article of the Code, which declares that the contractor shall be paid "in preference to other priviledged debts of the debtor, even funeral charges," etc. R. C. C. 3267.

The contractor's privilege is, therefore, first in rank, *quoad* the new constructions and works, and should be paid from the proceeds of *their* sale in preference to opponent's lessor's lien; but his lien does not attach to the property of the lessor which he repaired or improved under a contract with his tenant.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended in so far as to reject and disallow the privilege of the seizing creditor for material furnished and work performed, in the *repair* of the " property under lease," and to maintain and perpetuate the opponent's *injunction to that extent.*

And it is further ordered, adjudged and decreed that in so far as said judgment recognizes and enforces the contractor's lien of the seizing creditor on the new buildings and *other works* erected in the replacement of those which had been destroyed by fire, and which contain the electric light machinery and apparatus, that the opponent's injunction be dissolved and it be affirmed.

The cost of appeal is taxed against the seizing creditor and appellee.

## ON APPLICATION FOR REHEARING.

Both appellant and appellee desire a rehearing on some points of minor importance.

Without stating them in detail we will simply say:

1st. That the effect of the judgment of Schwartz against Saiter, both as to the debt and privilege, is confined to those litigants and does not have any bearing or influence on the demands of third opponent.

This is elementary.

2d. A simple perusal of our opinion will disclose the fact that the seizing creditor's, mechanic's and contractor's lien, for materials fur-

nished and work performed in making repairs and constructions, was the *principal* question that was discussed therein.

It is difficult to understand how a vendor's lien could be *seriously* asserted against the material contained in a building or the parts thereof, and which have become thus indistinguishable.

3d. It has been settled by numerous decisions—and is not an open question—that an appellant, who succeeds in obtaining an amendment favorable to himself of the judgment appealed from, is entitled to have the cost of appeal taxed against the appellee.

This is true of the instant case.

4th. But the appellant claims that, as it was the plaintiff in third opposition in the court below, and a general judgment went against it therein, from which it has obtained relief in part in this Court, and thus procured the perpetuation of its injunction against the seizure *pro tanto*, it is entitled to have the costs of the court *a qua* taxed against the appellee.

In this view we think its counsel are correct.

It is the rule of law that if the plaintiff recover *any portion* of his demand, he is entitled to cost. Had the judge *a quo* rendered the judgment we have pronounced, it would have carried cost in plaintiff's favor; and as our decree sustains its demands in part and *ab initio*, it must have a like effect.

5th. The further contention of appellant's counsel is that one decree should be supplemented so as to *limit* the portion of Schwartz's judgment that is to be enforced against the property it subjects to his *contractor's* lien.

This is a reasonable and proper request.

Having restricted his seizure and lien to the constructions established in the replacement of those which had been destroyed by fire, the *amount* of Schwartz's demand therefor should be likewise restricted, so that he should receive from the proceeds of sale when made nothing in excess thereof, in case a larger sum should be realized.

But this amount can be easily ascertained from the judgment of the lower court, and Schwartz's account, which forms a part thereof; and hence it is unnecessary that a rehearing should be granted for that purpose.

It is therefore ordered, adjudged and decreed that the following items of indebtedness of W. S. Saiter to and in favor of Moses Schwartz, seizing creditor, shall be collected from the proceeds of the sale made in pursuance of our judgment and decree and no others, viz:

Building enclosing machinery and one cistern........$650 00
Roofing and tinner's work......................... 75 00
Building foundation .............................. 60 00
Labor in erecting and constructing same ............. 125 00

|  |  |
|---|---|
| CR. | $910 00 |
| By amount of value of old dynamo.................. | 125 00 |

Amount balance............................$785 00

It is further ordered, adjudged and decreed that the cost of the lower court be taxed against the seizing creditor and appellee; and that, as thus limited, our former decree remain undisturbed.

Rehearing refused.