LAND, J.
This is a suit by a furnisher of materials to a contractor employed by the defendant board to construct a certain freight shed on one of the wharves of the port of New Orleans.
The shed was completed and delivered, and the contract price was paid in full, more *1023 than a month before notice of plaintiff’s claim was given to defendant board.
Plaintiff seeks to hold said board liable as surety under Act 134 of 1906 for failing to exact and record a bond .of the contractor for the payment of furnisher of materials, subcontractors, etc. The main defense is that Act 134 of 1906 has no application to the defendant board, a state agent, for the purpose of maintaining and constructing wharves, sheds, etc., in the interest of the commerce of the port of New Orleans.
There was judgment in favor of the defendant board, and the plaintiff has appealed.
The defendant board, as created by Act 70 of 1896, is a “board of state commissioners,” appointed by the Governor, and vested with jurisdiction. over the port of New Orleans, which extends beyond the limits of said city into the parishes of Jefferson and St. Bernard. The board was vested with power to regulate the commerce and traffic of the “harbor of New Orleans,” to have and enjoy all the rights, powers, and immunities incident to corporations, to take charge of and administer the public wharves of the port of New Orleans, to construct new wharves and sheds when necessary, to provide for lighting and policing the same, etc., etc. The board was vested with power to levy and collect wharfage charges on shipping for the purpose of defraying the expenses of administration, maintenance, and construction. By Act 36 of 1900 the said board was empowered to acquire by purchase or expropriation wharves and landings within the limits of the port of New Orleans. By Act 180 of 1908, which was adopted as a constitutional amendment, the board was empowered to issue $3,500,000 of 5 per cent, negotiable bonds, the proceeds to be expended in the extension of existing wharves, for building new wharves, for erecting sheds, for constructing roadways and other improvements, for the purchase of suitable dredges, barges, and tug boats, for the payment of wharves or other property purchased or expropriated, and for the payment of outstanding obligations. In order to secure the payment by preference of the principal and interest of said bonds, all revenues of the board collectible under existing laws were pledged. It follows from this legislation that the defendant board is a state agency, vested with certain powers, in the interest of the commerce of the port of New Orleans; that all of its revenues and funds have been dedicated to certain public uses; and that the board has and can have no corporate property or funds of its own to meet claims of the kind now urged by the plaintiff.
Plaintiff’s demand is founded on the failure of the defendant to exact of the contractor a bond with good and solvent security for not less than one-half of the contract price, conditioned “for the true and faithful performance of the contract, and the payment of all subcontractors, workmen, laborers, mechanics and furnishers of materials by the undertaker, contractor, master mechanic or engineer, the said bond to be made in favor of the owner, subcontractor, workmen, laborers, mechanics and furnishers of materials jointly as their interest may appear,” as provided by Act 134 of 1906. The same statute further enacts that “if the owner fails to exact said bond, or if he fails to cause same to be recorded in the office of the recorder of mortgages in the manner and within the time hereinabove provided, the owner shall be deemed in default, and shall be liable to the same extent as the surety would have been.”
Public corporations are not mentioned in the statute, which imposes a personal liability on the owner for failure to exact and record a good and sufficient bond from the contractor. The rule in our sister states is enunciated as follows:
“Public property is not as a rule subject to a mechanics’ lien; it being considered that, un *1025 less it is expressly made subject to such lien by statute, it is by implication exempted from the operation of the lien laws. Accordingly a mechanics’ lien cannot attach to a county courthouse, a county bridge, a municipal fire bell tower, municipal waterworks, a public library erected by a town, a lunatic asylum or public school building.” 27 Gyc. 25, 26.
As usual, there are a few cases to the contrary. We find the following note (Id. p. 25):
“A statute imposing a personal liability on the owner of property for the claim of materialmen does not establish any personal liability against a county in favor of one who furnished materials to a contractor for a public building of the county. Secrist v. Delaware County, 100 Ind. 59.”
See, also, Hovey v. Town of East Providence, 17 R. I. 80, 20 Atl. 205, 9 L. R. A. 156, in which the court said:
“It is easy to see what detriment might follow if lands and buildings held for public uses, as for instance for parks, courthouses, jails, town halls, or common schools, could be sold to satisfy the debts or defaults of municipal corporations having the legal title. The public uses would be thereby annihilated. Courts have presumed that this could not have been intended, and accordingly have decided, as a matter of public policy, that lands or buildings so held are not subject to mechanic’s lien.”
The plaintiff cites the case of McKnight v. Parish of Grant, 30 La. Ann. 361, 31 Am. Rep. 226, where the contractor sued for the balance due him on a contract for the construction of a parish jail. The court held that the contractor was entitled to a mechanics’ lien on the building but not on the acre of ground on which the structure stood. The same court had previously held that a courthouse and jail were not subject to seizure and sale under execution. Police Jury v. Foulhouze, 30 La. Ann. 64.
In the same case the court said:
“Property dedicated to public use cannot be the subject of private ownership. It is out of commerce, not liable to seizure.”
The McKnight Case was based on equitable considerations, as appears from the following extract from the opinion:
“It would be monstrous to allow the parish to appropriate another man’s material and labor in the form of a house and refuse to pay him because the lands on which it is built is inalienable and out of commerce.”
The case of Schwartz v. Saiter, 40 La. Ann. 264, 40 South. 77, cited by counsel for plaintiff, was one between private persons, and the seizure was of personal property and of an unexpired lease. The court said that it was not within its province in such a litigation to decide whether the soil on which the buildings stood was a locus publicus or not. The organ of the court, however, referred with approval to the McKnight Case, supra. Such expression of opinion was pure obiter. In the case of Pullis Bros. Iron Co. v. Parish of Natchitoches, 51 La. Ann. 1377, 26 South. 402, cited by counsel for the plaintiff, the contest was between a materialman and an assignee of the contractor over a balance due by the parish for the construction of a courthouse and evidenced by a judgment of the United States Circuit Court. The decision was in favor of the material-man, who had served his attested account on the police jury and recorded the same.
The privilege of the contractor and the materialman on the courthouse does not seem to have been contested by the police jury. The court inter alia said:
“All parties in this case assert liens and privileges against the courthouse building and the building alone. There is no question in regard to any of the parties having a lien or privilege upon the ground upon which the building rests. Consequently the case of Schwartz v. Saiter, 40 La. Ann. 264, 4 South. 77, and McKnight v. Parish of Grant, 30 La. Ann. 361, 31 Am. Rep. 226, may be left out of view.”
These decisions were rendered under the provisions of Civil Code of 1870, which do not apply to plaintiff’s case, which rests entirely on the provisions of Act 134 of 1906, which makes the owner, who fails to exact a good and sufficient bond of the contractor in favor of subcontractors, materialmen, mechanics, and laborers, and to record the same, liable in the same manner and to the same extent as the surety would have been.
*1027 According to the great weight of authority in other jurisdictions, the said statute has no application to public property or public corporations. The McKnight Case was based on very strong, equitable considerations. The contractor had not been paid, and the parish was enjoying the fruits of his work without compensation. In the case at bar the contractor was paid in full before notice of the claim of the plaintiff.
The defendant board is not the owner in the ordinary sense of the wharf and shed in question but holds the title in trust for public purposes. The revenues of the board have already been dedicated to public use, and the board has no funds for any other purpose. That such a board, a state agency, and trustee for the public, is within the purview of Act 134 of 1906 is a proposition which in our opinion cannot be successfully sustained by reason or authority; and we are satisfied that such was not the legislative intent.
It is therefore ordered that the judgment below be affirmed, and that the plaintiff pay costs of appeal.