Statement of the Case.
MONROE, C. J.
This is an ordinary action, unaccompanied by any seizure, in which plaintiff annexed to and made part of its petition interrogatories on facts and articles addressed to the parish of Caddo, to be answered by the president of the police. jury, for the recovery of money alleged to have, been advanced to the defendant named in the caption to enable it to execute a contract with the parish of Caddo for the building of a public road in and for that parish; the parties made defendants being the contracting company, the parish of Caddo, and the surety on a bond taken by the parish from the contracting company. Exceptions of no cause of action were filed on behalf of the company and the parish, and that filed on behalf of the parish was maintained by a judgment reading, in part, “that the exception of no cause or right of action, filed herein by the police jury of Caddo parish, one of the defendants herein, be sustained, and that plaintiff’s suit be dismissed, so far as the police jury of Caddo parish is concerned, at the cost of plaintiff herein,” from which judgment plaintiff has appealed.
The allegations of the petition which are pertinent to the issue here presented are as follows (stating them in substance, or verbatim as may appeal-best), to wit:
That the construction company entered into a written contract with the police jury (representing the parish) to build a certain public road, and found it necessary to obtain money wherewith to carry on the work; that petitioner advanced such money in amounts aggregating over $12,000, for which it received the company’s demand notes, and of which $1,799.96 were repaid and $800 were not used for the work in question.
“That, for the better protection of petitioner in making said advances and furnishing said money, said * * * company made to petitioner an assignment and transfer of its right, title, and interest in said road contract to the extent of $6,000, which is * * * evidenced by a communication * * * addressed to the police jury * * * by the * * * company, * * * and in it the police jury * * * were informed that the * * * company had been advanced by your petitioner the sum of $8,000, which had been used by the company to meet its pay rolls under its contract, * * * and that, in order to secure the bank for said amount, the company had assigned and transferred to petitioner all its right, title, interest, and equity in said contract; that said communication further stated that ‘this assignment and transfer means that, from and after this date, the said bank is to be paid the amount due me on monthly estimates, under my said contract, over and above any claim or claims which may be filed with you, or notified to you, after the date of this assignment and transfer;’ and the police jury -was asked to enter up on its records and take notice of the assignment, and to govern themselves accordingly; that the said communication was served upon the police jury and received by the president and road engineer on the day of its date, and at the same time formal notice was served upon said parties by the attorney for the bank; * * * that the police jury ignored said assignment, and failed and refused to pay over to the bank any of the funds due, and thereafter to become due, under its said contract; * * * that the * * ' * law * * * required the police jury, in executing said contract with said company, to exact from the latter a bond with good and sufficient surety to secure the payment of the claims of those who should furnish labor, materials, supplies, money, etc., needed and used in the prosecution of the work of the contract; that petitioner is advised, and being so advised, charges that the police jury failed to exact such *841 a boncl, in the particular mentioned, as the statute provides for, and that such failure renders the parish of Caddo personally, or as a political corporation, liable to petitioner for the said sums hereinbefore set forth, * * * with 8 per cent, interest; * * * that said company, so petitioner is informed and believes * * * has gone to pieces, is no longer a going concern, has ceased to maintain an office, * * * has :no assets or property, owes large debts, and is insolvent ; that ' * * said police jury did take and accept from said company a bond in the sum of $20,500, with the South Western Surety Insurance Company of Oklahoma, * * * as surety. As heretofore stated, petitioner has been advised, and, on such advice, has charged that the police jtíry failed to exact such a bond , as meets the requirements of the law, but, in the alternative, if it (petitioner) be mistaken in this and the bond exacted as aforesaid is held to be sufficient in law to secure payment of those who furnished labor, paid labor bills, supplied materials, money, etc., in the prosecution of the work of the contract, including petitioner, then petitioner alleges that it is entitled to judgment in solido, against the principal^ and surety on said bond, for the amount of its said claims, with interest as aforesaid; that the parish of Caddo is indebted to petitioner in the amount of $6,000, for which the assignment hereinbefore set forth was given, because said parish, acting through its police jury, ignored the said assignment and failed to pay the amount due petitioner thereunder, and which amount. said assignment was intended to secure; and the said parish is indebted to petitioner in the full and aggregate amount of the several notes mentioned in article 111 of this petition, less the credits on said notes, and less the $800 referred to in said article as not having been used in road construction, because said parish failed to exact and take from the contractor the bond required by law for the protection of those who aided the contractor, by; labor, material, money, etc., in the prosecution of the work of the contract; that at the time said assignment was served on the parish, there was sufficient balance of the contract price, still unexpended, to meet petitioner’s said claim, which balance was thereafter paid out by said parish to the detriment of petitioner’s rights under said assignment ; that, instead of paying the then creditors of the contractor * * * out of the funds still to the credit of the contract price at the time the assignment was made to petitioner and at the time the parish, or the bond company, took over the completion of the road, and then in ease of shortage of funds calling on the bond company to make up the deficiency, they (the police jury and its representatives) took all the fund and paid it out in defiance of the rights of said creditors, not calling on the bond company for anything. Petitioner charges that this was done pursuant to an arrangement of their own between the bond company and the police jury and its road engineer, which arrangement was made after the company had fallen down on its road contract, and that in this way preference was given by the parish to the bond company, while creditors of, the contractor were left with the ‘bag to hold’; that petitioner is entitled, because of its said assignment, to payment by preference over all those whose claims aróse subsequent to the date of said assignment, but that, notwithstanding, the parish and the bond company paid the funds out to others, thereby refusing to recognize petitioner’s superior rights.”
The interrogatories annexed to and made part of the petition add nothing to the matter to be here considered. The answers to the interrogatories were naturally not annexed to or made part of the petition, but they are in the transcript, and plaintiff’s counsel, though complaining that they are insufficient, and suggesting that they should be taken for confessed, also insists that they are part of the pleadings, meaning of the petition, and are to be so considered by the court at this time. Taking them as we find them, we discover nothing in them which strengthens the allegations of the petition. The president of the police jury answers that he is not the custodian of its records,-and, in the main, refers plaintiff to the records, and to copies which he says they are at liberty to obtain from the custodian. He does say that the construction company defaulted on its contract; that the proper steps, as he thought, were taken to fix the liability of its surety; that the surety company at first declined to go on with the work, and that the police jury undertook to do so; that he thinks that the surety company subsequently acquiesced; that in completing the work the police jury expended the entire amount called for by the contract, with the exception of about $1,140, which, he thought, had been deposited in court.
Interrogatory 18, and the answer thereto, read as follows:
“(18) Is it not true that you, or the parish, or its road engineer, have called on the bond company (meaning the surety on the bond of the Louisiana Petrolithic Construction Company) for nothing, but have paid all claims against the road subsequent to the date of said assignment, *843 out of the contract fund? If this he so, was it not done pursuant to an understanding had between the parish officials and the bond company? If you answer ‘Yes’ to this question, state fully what such understanding was.”
Answer to interrogatory 18:
“As already answered, we called on the surety company, soon after the contractor had defaulted, to comply with the obligations of the contract and bond. The bond company would not take hold and complete the work, as stipulated in the contract and bond, whereupon the police jury undertook the work, as it had a right to do, under the terms of the contract and bond. I do not understand that any moneys have been paid over to the original contractor since the alleged assignment made to the Red River Bank & Trust Company, but moneys have been expended by the police jury for the completion of the road under the terms of the contract. The police jury proceeded independently after the bond company refused to act in completing the road. Subsequently, I think the bond company gave its assent to the work being done by the police jury.”
Nothing appears to have been done in the trial towards taking the interrogatories for confessed.
Plaintiff prays that the parties named in the petition be cited, and for judgment against them in solido, and against each of them, severally, for the several amounts represented by the notes described in the petition.
Opinion.
[1 ] It cannot reasonably be contended that the construction company could, without the consent of the parish, inject plaintiff into its contract with the parish, as a substitute for itself, or, without such consent, confer upon plaintiff any right, with respect to the execution of that contract, which it did not itself possess, and few, if any, that it did possess. Taking the allegations of the petition proper, and adding thereto (as plaintiff’s counsel thinks should be done) the interrogatories and answers, and applying the law, it appears that, the company having defaulted, the parish had the right, under the contract, to complete the work at its (the company’s) expense, and that, having done so, it had in its hands a balance of $1,140 of the price that it had agreed to pay; but that when it was notified of the assignment, the work had not been completed, the balance had not been ascertained, and it was under no obligation to accept any order against part of the price, and incurred none in refusing to accept that presented by plaintiff, and that when the balance was ascertained, it had the right, if. conflicting claimants had presented themselves, or were likely to do so, to deposit such balance in court, for them to litigate over, as it appears to have done.
It was said by this court, more than three-quarters of a century ago, that it was well settled that, where an order is drawn on a general, or particular, fund, for a part only, it does not amount to an assignment of that part, unless the drawee consents to the appropriation by an acceptance of the draft, or an obligation to accept may be fairly implied from the custom of the trade, or the course of business between the parties, as part of their contract (Poydras v. Delamare et al., 13 La. 101), and the doctrine thus mentioned was affirmed in Meyer v. Railroad Co., 35 La. Ann. 898, upon a basis of facts which we think makes the affirmance particularly applicable to this case. We note that there is no allegation in plaintiff’s petition of any custom of the trade or course of dealing between the parties whereby the contracting company was authorized to give orders upon the parish, even for past-due installments, not to mention installments to become due, or by reason whereof plaintiff was led to believe that such orders would be accepted; nor is it alleged that defendant was indebted to the contractor when the assignment was taken, or the notice given; the allegation that there was a sufficient balance of the contract price still unexpended to meet plaintiff’s claim not bearing that meaning, since the whole of the contract price *845 might have been unexpended and yet not due to the plaintiff.
[2] In support of its allegation ;that the. parish is liable to it by reason of its failure to exact the bond, alleged to be required by law for the protection of those who aided the contractor by labor, materials, money, etc., in the prosecution of the contract, plaintiff relies on Act 167 of 1912, the pertinent provisions of which read as follows:
“That every contract for $1,000 or more, here: after made or entered into for the repair, reconstruction, erection, or construction of any work by an undertaker, contractor, master mechanic, or engineer, shall be reduced to writing and signed by the parties, * * * 'and shall be recorded, * * * and such recordation shall create a lien and privilege on the building and ground or other work, so repaired, reconstructed, erected, or constructed, in favor of the said undertaker, contractor, master mechanic, engineer, subcontractor, workman, laborer, mechanic and furnishers of materials, as their interests may appear.
“The owner of such work shall require of such undertaker, contractor, master mechanic, or engineer a bond with good and solvent surety as follows: * * * which bond shall Be attached to, and recorded with, the contract, in the mortgage office -as above set forth, and the condition of which bond shall be the true and faithful performance of the contract, and the -payment of all subcontractors, workmen, laborers, mechanics, and furnishers of materials by the undertaker, contractor, master mechanic or engineer, the said bond to be made in favor of the owner, subcontractors, workmen, laborers, mechanics and furnishers of materials jointly, as their interests may appear.”
Another provision declares that:
“If the owner fails to exact bond, or if he fails to cause the same to be recorded in the office of the recorder of mortgages in the manner and within the time herein above provided, the owner shall be deemed in default and shall be liable to the same extent as the surety would have been.” etc.
And still another declares that:
“The purpose of this act is to require owners to secure bond, with solvent and sufficient surety, from the undertaker, contractor, master mechanic or engineer, for the protection of all parties interested in the contract; as their interests may appear, and which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic or engineer.”
As relates to the applicability of the statute thus quoted to public corporations and public property, its provisions do not differ from those of Act 134 of 1906, which was considered by this court in Barrett v. Board of Commissioners, 133 La. 1022, 1027, 63 South. 505, 506 (50 L. R. A. [N. S.] 469), and it was there said:
“According to the great weight of authority in other jurisdictions, the said statute has no application to public property or public corporations. * * * The defendant board is not the owner, in the ordinary sense, of the wharf and shed in question, but holds the title in trust for public purposes. * * * That such a board, a state agency, and trustee for the public is within the purview of Act 134 of 1906 is a proposition which, in our opinion, cannot be successfully sustained by reason or authority, and we are satisfied that such was not the legislative intent.”
In State v. Jackson & Co., 137 La. 931, 69 South. 751, it appeared that the state and the parish of Sabine had instituted a suit for the purpose of provoking a concursus of the creditors of the defendants, who had defaulted on a contract for the building of a public highway, which had been completed by the surety on their bond; that the state had deposited in court a balance of $7,070.02, which was due on the contract price; that the unpaid laborers, materialmen, and subcontractors, called in concursus, set up claims against the state, parish, and surety, and prayed that they be condemned in solido for the debts of the contractor, and that they (the creditors) be recognized as entitled to liens and privileges therefor, under Act No. 134 of 1880, and (as it appears also to have been argued) under article 3272 and other articles of the Civil Code. The statute thus referred to was enacted to carry into effect article 175 of the Constitution of 1879, with which article 185 of the Constitution of 1898 is identical, and which reads:
“The General Assembly shall pass laws to protect laborers on buildings, streets, roads, railroads, canals, and other similar works, against the failure of contractors and subcontractors to pay their current wages when due, and to make *847 the corporation, company, or individual, for whose benefit the work is done, responsible for their ultimate payment.”
The statute itself declares that:
“Laborers and workingmen on buildings, •streets, railroads, canals, ditches and other similar works, when their services are engaged by the proprietor, or any agent of the proprietor, upon any of the works above enumerated, shall have a first privilege upon the buildings or other works upon which their labor lias been bestowed.”
Section 2 provides that, where such works are done by a contractor or subcontractor, it shall not be lawful to pay him any portion of the contract price until the amounts due the laborers and workingmen, to the date of the payment, have been paid or secured, and that no advance payments shall be made to the contractor or subcontractor, save in proportion to the work done and in such manner as to leave, until the completion of the work, a sum sufficient to secure the bills for labor or work. Section 3 authorizes the laborer or workingman to record his claims for the amount probably to become due, such recordation to operate as a first privilege on the work, “in the event of the violation of the provision of this law by the proprietor or his agents.” And section 5 declares:
“That the amounts to be paid by the owner to such laborers shall not exceed the amount such owner is bound for to his contractor at the time of recording.”.
The General Assembly was not, and is not, required to provide, in the same statute, for wages earned on public and private works, nor was, nor is, it required, in any case, to accord liens and privileges on the works, and it evidently realized the difficulty of attempting to subject public roads to liens for laborers’ wages, since it omitted the word “roads,” as contained in the enumeration of the Constitution, from the statute.
In the cited case this court said:
“It will be noted that, while the said article of the Constitution reads, ‘streets, roads, railroads, canals,’ the said Act of 1880 reads ‘streets, railroads, canals,’ leaving out the word ‘roads.’ In view of this, omission, which cannot be supposed to have been accidental, we must hold that the said statute does not apply to roads. * * * Statutes in derogation of common right, such as those conferring liens are recognized to be, are required to be strictly construed ; that is to say, their terms are not to be extended by implication, or by the invocation of any supposed intention. * * * In the brief of the learned Attorney General, appearing herein for the state, we are referred to articles 2773, 3249, and 3272 of the Civil Code, which provide that workmen and materialmen may cause the amount due the contractor to be seized, and that they have a privilege upon the buildings or other works. In quoting article 8272 in his brief the word ‘public’ has been added before the word ‘works’; but it is not in tlie. text. In the absence of that word, the said article 3272 cannot be made to apply to a work of a public character like a public road. That question was considered by this court in the recent case of Barrett v. Board of Commissioners, 133 La. 1022, 63 South. 505, 50 L. R. A. (N. S.) 469, where it was held that public property did not come under the operation of statutes creating mechanics’ and other liens, unless expressly so provided in the statute. And this holding was simply in line with a well-established jurisprudence, referred to in said decision.”
In the statute upon which plaintiff relies the character of the property to be affected is indicated in the general terms, as “any work,” “the building and ground or other work,” but there is an enumeration of the persons for whose benefit the statute was enacted; the lien and privilege being accorded to the “undertaker, contractor, master mechanic, engineer, subcontractor, workman, laborer, mechanic and furnishers of materials, as their interests may appear”; and the bond is required “to be made in favor of the owner, subcontractor, workmen, laborers, mechanics and furnishers of materials, jointly, as their interests may appear.”
Public roads are not mentioned, nor are persons who have loaned money to the contractor included in the enumeration of the statute in question, nor in any other of the several upon the same subject, and the enumeration, we think, controls the general language used elsewhere in which the purpose of the act is stated.
*849 Counsel for plaintiff say in their brief:
There is no statute granting any one a lien on a public road. “Neither subcontractors or laborers, or materialmen could claim a privilege on the road, nor on the proceeds of its construction. This is made clear by this court in the Jackson Case.”
They, however, insist upon the liability of the parish of Caddo, though, under the statute which they invoke, such liability is predicated exclusively upon the failure of the owner to require of the contractor and to have recorded a bond, which, when recorded, will secure such privilege, the language being: .
“If the surety is found to be not solvent, or insufficient to cover the full amount for which he is bound, or if the owner fails to exact a bond, or if he fails to cause the same to be recorded in the office of the recorder of mortgages, in the manner and within the time hereinbefore provided, the owner shall be deemed in default, and' shall be liable to the same extent as the surety would have been,” etc.
If, however, the parish was under no obligation to take the steps required of the “owner.” to establish the privilege, how can it be said that it rendered itself liable by reason of its failure to take such.steps? But if it be conceded that it becomes liable to those specified in the statute by its failure to exact the bond, whether it caused the bond to be recorded or not, the fact remains that a lender of money to the contractor is not one of the beneficiaries so specified, and it may very well be doubted whether a parish can be regarded as the “owner” of a public road, or the agent of the owner,' within the meaning of that word, as used in the statute.
We, therefore, conclude that the exception was properly sustained. The learned counsel also say in their brief that, although the exception filed by the parish was the only one that was taken up and argued, the trial judge dismissed the entire suit; but in that they are mistaken, for, as we have stated, the judgment sustains only the exception filed by the police jury, and dismisses the suit only “so far as the police jury of Caddo parish is concerned.”
Judgment affirmed.