## FOUCHAUX v. BOARD OF COM'RS OF PORT OF NEW ORLEANS.*

### No. 16691.

Court of Appeal of Louisiana. Orleans.

Feb. 6, 1939.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

Lewis L. Morgan and Philip S. Pugh, Jr., both of New Orleans, for appellee.

Adam H. Harper and James W. Hopkins, both of New Orleans, amici curiæ.

*Rehearing denied Feb. 27, 1939; writ of certiorari granted by Supreme Court April 3, 1939.

JANVIER, Judge.

The question presented here is one of law: Whether the Board of Commissioners of the Port of New Orleans may be held liable in tort. The issue was raised by exception of no cause or right of action, which, in the district court, was sustained with the consequent dismissal of the suit.

Douglas Fouchaux alleges that on June 15, 1935, he was in the employ of the International Harvester Company as a laborer and that he was employed on a wharf adjoining one operated by defendant, which we shall hereafter refer to as the "Dock Board". He charges that he was a tractor driver for his employer and that it was necessary for him to drive the tractor, with loaded trailers, upon a large elevator of defendant located on the said wharf and that, as he drove the said tractor and first trailer upon it, the elevator, because of defects, fell and he was hurt. He further charges that the said elevator and all machinery and equipment were the property of defendant Dock Board and that it was maintained and supervised by the said Dock Board; that, to the knowledge of the officials of defendant, the said elevator had fallen on a former occasion. He charges, also, that the said Dock Board "is a Public Board of the State of Louisiana, created by law, with the power to sue and be sued * * *".

The sole defense is that the Dock Board is an agency of the sovereignty, to-wit, the State of Louisiana, and that, therefore, it cannot be sued except with the permission of the State, and we may say at this point that, of course, were we required to accept as true the charge that the said Board was "created by law with the power to sue and be sued", as plaintiff alleges, the matter, so far as the exception is concerned, would end there. But, being a public board created by law, we cannot accept as true that statement unless we find that the applicable statutes do authorize the said Board to sue and authorize persons dealing with it, or persons having claims against it, to sue it.

In support of its contention that such an action as this may not be maintained, the Dock Board calls attention to two cases decided by the Supreme Court of Louisiana in which that court held that no such suit might be maintained. The first of these cases was Barrett Manufacturing Company v. Board of Commissioners of Port of New Orleans et al., 133 La. 1022, 63 So. 505, 50 L.R.A.,N.S., 469, the second, Lamport &

Holt, Ltd. v. Board of Commissioners of Port of New Orleans, 137 La. 784, 69 So. 174. In the Lamport & Holt Case certain bags of coffee, which had been stored in one of the sheds of the Board, had been damaged by leakage through the roof of a shed. To a suit for reimbursement for the damage sustained, the Board rasied the defense that under the law which created it there was no fund and there could be no fund out of which any judgment might be paid since it was not authorized by law to provide or create any such fund; that the charges which it, the said Board, was authorized to make for the operation of the sheds and wharves, were restricted to such amounts as might be necessary to construct, maintain and manage such facilities, and that there could not be included in such charges any amount to be used for paying for damage caused, or for other such claims; that the Board did not occupy the legal status of ordinary warehousemen since it could not conduct its business at a profit; and, finally, the Board contended that, as a state agency, it could not be sued for acts of nonfeasance or of malfeasance. The court did not express an opinion upon the question of the immunity as an agency of the sovereignty, but decided the matter squarely on the ground that, under the then controlling statute, there was no fund and could be no fund out of which such a judgment might be paid. At that time the pertinent provisions of Act No. 70 of 1896, as amended by Act No. 36 of 1900, under which statutes the Dock Board was controlled, provided, as the Supreme Court found, that that Board could do nothing except collect charges, which must be fixed at such figures as would provide for the actual operating cost of the wharves, and that there was and could be no fund out of which any such judgments might be paid.

The court had already reached the same conclusion in the Barrett Case, in which the court said [page 506]: "The defendant board is not the owner in the ordinary sense of the wharf and shed in question but holds the title in trust for public purposes. The revenues of the board have already been dedicated to public use, and the board has no funds for any other purpose."

The decision in the Lamport & Holt Case was rendered on June 11, 1915. Rehearing was refused on June 29, 1915 and just at that time the Legislature of Louisiana enacted Act No. 14 of the Extraordinary Session of 1915, which was approved on June

10, 1915 and which left to the discretion of the Board the right to fix such charges as it might deem necessary. And not only did that statute leave the fixing of charges to the discretion of the Board, but from it the framers thereof omitted the very language on which the Supreme Court based its decision in the Lamport & Holt Case and in the Barrett Case. Therefore, since the effective date of the 1915 act the Board may charge, and, so far as we know, it may have charged rates sufficient to provide for payment of all judgments which may be rendered against it, and, so far as we know also, it may have provided a fund to pay any just claims which may be presented to it, and we think, therefore, that, since the Supreme Court, in those two cases, based its decisions squarely and solely on that fact—that there was not and could be no fund out of which such judgments could be paid—the result reached there is not necessarily controlling here.

It is argued by counsel for the Dock Board that, since the said statute of 1915 was approved before the decision in the Lamport & Holt Case became final, the court must have taken it into consideration when it decided that case and that, therefore, we may not now reach a conclusion based on the Act of 1915 different from that reached in the Lamport & Holt Case.

But that statute did not become effective on the date on which it was approved, and, in the second place, it could not have been availed of to create a right which did not exist prior to its enactment and the existence of which must be determined as of the day on which the damage was sustained.

Whether the Dock Board, acting as an agency of the sovereignty, enjoys immunity, is another question. Although in the Lamport & Holt Case the Supreme Court referred to the Barrett Case as having held that the Board may not be liable, "being a state agency, whose property is public and not liable to seizure", the ratio decedendi of the Barrett Case, as we have shown by quotation from that decision, was that the Board had no fund out of which any such judgment might be paid.

▆▆▆▆ Counsel for plaintiff, pointing to the distinction between the conducting by municipalities of governmental functions and those of a proprietary nature, maintain that, in operating docks and wharves, a municipality—which, they say, is a state agency —acts in a proprietary capacity, and they argue from this that it follows that munici-

palities which operate such wharves may be sued. In support of this contention they cite Fennimore v. City of New Orleans, 20 La. Ann. 124, in which it was held that the City of New Orleans might be held liable for defects in such wharves. It will be remembered that at that time the City was operating the docks and wharves and it must be conceded that, in doing so, it was operating as an agency of the sovereignty itself and that, nevertheless, it was held that the City might be held liable for damage caused by defective wharves. But the charter of the City at that time, as now, authorized the bringing of suits against it, and, where there is such authority to sue a municipal agency of the State, it is settled that, under that authority, suits may be maintained where the function which has given rise to the cause of action is a proprietary one. But, where no authority to sue the agency exists, it is equally settled that the agency may not be sued since it is an agency of the sovereignty and since such sovereignty may not be sued without its consent. Nowhere in the statute creating the Dock Board, nor in any of the subsequent amending statutes can there be found any express authority for the maintaining of a suit against the said Board. As a matter of fact, the Dock Board seems to be recognized under the laws of this state as a little closer to the sovereignty than is an agency such as a municipality, or general agent given broad general powers. This agency, the Dock Board, is in effect the State itself. It is created for the purpose of doing one thing; that is, for the construction and operation of docks and wharves at the principal port of the State. This was recognized in State ex rel. Tallant v. Board of Commissioners of Port of New Orleans, 161 La. 361, 108 So. 770, in which the court, referring to the said Board, said [page 771]:

"And we make mention of the purpose of its creation, of its *status,* and of the property under its administration to the end that it may be observed that defendant is not a corporation but a mere state agency; that the property under its administration is *not* its own but *public property;* that the purpose for which defendant was created was to 'remove the obstacles' in the way of the advancement and prosperity of the port of New Orleans and lighten the burden on its commerce *by reducing expenses and selecting competent employees.* So that when the General Assembly of the state (now 'the Legislature') deals with the affairs of the board of commissioners of the port of New

Orleans, it is as a master speaking to his servant with respect to that which is the master's own. Its commands in such matters *transcend*, as it were, the domain of ordinary legislation; it then speaks with *dual authority*, that of sovereign and that of master." (Italics by Supreme Court.)

It is true that we find rather contradictory language in the decisions rendered by the Supreme Court in Board of Commissioners v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127, and Saint v. Allen, 172 La. 350, 360, 134 So. 246. In the former case prescription liberandi causa was pleaded against the Dock Board and it was argued on behalf of the Board that, being a state agency, prescription could not be pleaded against it. The court recognized the fact that no prescription runs against the state and that this was an exception to the general rule, but said [page 128]: " * * * we are not prepared to hold that the exception thus established in favor of the state applies to any or 'all other public corporations or agencies; * * *".

But there it was held that the prescription had actually been interrupted and, therefore, that the plea of prescription was not well founded. Since, then, the court held that prescription had been interrupted, the statement to which we have referred seems to have been unnecessary in the decision of the case. At any rate, in the later decision (State ex rel. Tallant v. Board of Commissioners, supra) the Supreme Court squarely recognized that the said Board not only is an agency of the sovereignty, but seems to be, in effect, almost the sovereignty itself.

In Saint v. Allen, supra, the court said that the Louisiana Highway Commission is not the state itself, but is a separate legal entity. But it has always been held that the said Highway Commission is an agency of the state and that is all that is necessary in order that it be immune to suit unless the consent of the state is given.

■■ It is true that Act No. 14 of 1915 declares that the said Dock Board shall have and enjoy all of the rights, powers and immunities incident to corporations. But we do not think that this general reference to the powers and rights of the Dock Board includes the right to sue, or the obligation to submit to suit, since those rights and powers and obligations are usually required to be specially referred to. The immunity exists unless it is especially waived by the

state, and the general grant of such powers as corporations usually exercise should not be construed as a waiver of this immunity. Even where the right to sue and the obligation to submit to suit are granted by statute, it is generally held that such grant includes suits on contract but does not contemplate actions for tort. See Orgeron v. Louisiana Power & Light Company et al., 19 La.App. 628, 140 So. 282, in which we said [page 285]:

"In analogous situations, various courts have held that, though a state may create a special corporation to perform particular governmental functions, and that, though in the statute creating such corporation or agency or department, it may be provided that the said creature may sue and be sued, nevertheless such provisions merely permit suits in contract and for special purposes, but do not constitute permission to institute actions for tort. Riddoch v. State, 68 Wash. 329, 123 P. 450, 42 L.R.A. (N.S.) 251, Ann. Cas.1913E, 1033; Murdock Parlor Grate Co. v. Commonwealth, 152 Mass. 28, 24 N.E. 854, 8 L.R.A. 399; Houston v. State, 98 Wis. 481, 74 N.W. 111, 42 L.R.A. 39; Davis v. State, 30 Idaho 137, 163 P. 373, Ann.Cas. 1918D, 911; [Sandel v. State, 115 S.C. 168, 104 S.E. 567] 13 A.L.R. 1276; Burroughs v. Commonwealth, 224 Mass. 28, 112 N.E. 491, Ann.Cas.1917A, 38; United States v. Cumming, 130 U.S. 452, 9 S.Ct. 583, 32 L.Ed. 1029; United States v. Irwin, 127 U.S. 125, 8 S.Ct. 1033, 32 L.Ed. 99."

■ See, also, Rome v. London & Lancashire Indemnity Co., La.App., 169 So. 132. Therefore, if the granting of the right to sue and the imposing of the obligation to submit to suit are generally held not to include the obligation to submit to suit in tort, then surely the grant of only such authority as corporations exercise could certainly not be construed as including the obligation to submit to a suit in tort.

Counsel point to the fact that the Dock Board was created for the purpose of combining under one head the operation of one port instead of several which might otherwise have been operated by the various parishes which might have been interested, to-wit, Orleans, Jefferson, St. Bernard, Plaquemines, and possibly some of the other parishes farther up the river, and they argue from this that, if each of the said parishes, had there been no Dock Board, had attempted to operate its own independent wharf, it might have been held liable in tort for the negligent operation thereof.

But the answer to that has already been given. The police jury of each of those parishes and the commission council of the City of New Orleans operate as agencies of the State of Louisiana and, in the charter creating the City of New Orleans and in the statutes granting authority to the police juries, there is given the right to sue and there is imposed the obligation to submit to suit. There is no such grant in the statutes creating the Dock Board.

Counsel point, also, to the fact that the Dock Board may be sued in compensation under Act No. 20 of 1914, as amended, and, as evidence of this obligation to submit to such suit, they cite Dourrieu v. Board of Commissioners of Port of New Orleans, La.App., 158 So. 581. But the compensation statute itself contains the permission of the state that its agencies may be sued where a compensation claim is involved.

Again, counsel call attention to the fact that in many cases the Public Belt Railroad Commission of the City of New Orleans has been sued for acts of nonfeasance or malfeasance. Lest it be thought that those several cases are in any way controlling here, we call attention to the distinction between the two boards. The Dock Board is a direct agency of the State vested specifically with authority to operate the wharves and port facilities in the City of New Orleans. The members of the Board are appointed by the Governor and the City of New Orleans has no authority over it. The Public Belt Railroad Commission, on the other hand, is a department of the City of New Orleans and not an agency of the State itself. See Marr's "Political Corporations under Louisiana Law", Section 501, page 579; Davis v. New Orleans Public Belt R. R., 155 La. 504, 99 So. 419, 31 A.L.R. 1303. In Solomon v. City of New Orleans, 156 La. 629, 101 So. 1, the Supreme Court, referring to the Board of Commissioners of the Public Belt Railroad Commission, said [page 2]:

"Nor is there any greater force in the contention that the board of commissioners is a governmental agency separate and distinct from the municipality. The board is the agent of the city, and not of the state. It is subject to the appointment by the mayor and council, and is at all times under the control of the mayor and council.

"No one will controvert the fact that a municipality may own and operate a railway system, passenger or freight, electric or steam, under proper legislative or constitutional grant, as all municipal powers must come from the sovereign. But because the municipality is a creature of the sovereign, it does not follow that in carrying out the legislative mandate to engage in such private local municipal enterprise the municipality functions only as the agent of the state."

And, in the charter of the City of New Orleans, by which city the Public Belt is created, the right to sue and the obligation to submit to suit are contained. Obviously the city could not have granted to the Public Belt any immunities which it did not itself enjoy. The court, in the Solomon Case, explains that a municipality which engages in a proprietary as distinguished from a governmental function may be liable in tort for damage resulting from injury of its employe, and the reason for this is that the municipality, though it is an agency of the sovereignty, may claim immunity as such agent, only where the act complained of was done in connection with the performance of governmental functions.

We find in the case before us the same legal situation which was presented in Orgeron v. Louisiana Power & Light Company et al., supra, in which we referred to the fact that a public board of the state, though it may engage in the performance of functions usually designated as proprietary, may not be sued for the results of its operations unless the sovereignty has granted permission that suits of that character may be brought. There we said:

"It is apparent that there has arisen, and that there is now on the ascendency, a tendency, in applying the doctrine of the immunity of the sovereign, to distinguish between the state itself and the various boards or departments now so numerous in all commonwealths. It is possible that a solution of the problem we have been discussing may lie in such distinction, which is shown to exist to some extent in Louisiana by a reading of the decision in Board of Commissioners of the Port of New Orleans v. Toyo Kisen'Kaisha, 163 La. 865, 113 So. 127, 128, in which the Supreme Court, while recognizing the principle that prescription liberandi causa does not run against the state itself, said that it was nevertheless, operative against a state department or board (board of commissioners of the port of New Orleans). The court used these words:

" ' * * * We are not prepared to hold that the exception thus established in favor

of the state applies to any or all other public corporations or agencies.  *  *  *'

"Nevertheless, we do not feel that it is within our right or prerogative to overturn a principle of law which has, from a time almost beyond the memory of man, been firmly imbedded in our jurisprudence, and which seems to be based on the written laws of our state as they exist to-day.  If it be desirable that there be adopted, instead of the doctrine of the immunity of the sovereign, some more democratic rule, it must be for the legislative branch of the sovereign state to so decide.  The courts may only interpret and apply written laws as they are enacted by lawmakers, and, in such situations, as we have here considered, the difficulty really lies in the fact 'that legislatures have been unwilling to re-examine the whole subject from the point of view of theory and history, in order to bring the law into harmony with the practical exigencies of modern life.'  Borchard, 'Government Liability in Tort,' Yale Law Journal, supra."

 We are of the opinion that the Board of Commissioners of the Port of New Orleans may not be sued in tort.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed, at the cost of appellant.

Affirmed.