605 So.2d 654 (1992)
RIVER MARINE CONTRACTORS, INC.
v.
The BOARD OF COMMISSIONERS FOR the ST. BERNARD PORT, HARBOR AND TERMINAL DISTRICT, et al.
No. 92-CA-0526.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 1992.
Writ Denied November 20, 1992.
Sidney D. Torres, III, Roberta L. Burns, Chalmette, and Manuel A. Fernandez, New Orleans, for plaintiff/appellee.
J. Michael Orlesh, Jr., Gerald O. Gussoni, Jr., New Orleans, and Mack E. Barham, Robert E. Arceneaux, Barham & Markle, New Orleans, for defendant/appellant.
John F. Rowley, Dist. Atty., Wayne J. McDougall, Asst. Dist. Atty., Chalmette, for defendant/appellee.
Before BARRY, BYRNES, and JONES, JJ.
BYRNES, Judge.
The Board of Commissioners for the Port of New Orleans appeals a judgment involving a jurisdictional dispute between the Port of New Orleans and The Board of Commissioners of the St. Bernard Port, Harbor and Terminal District. We reverse and remand.
In 1989 the Board of Commissioners for the St. Bernard Port, Harbor and Terminal District (the "Port of St. Bernard") purchased certain tracts of land on the Mississippi River in St. Bernard Parish. On February 1, 1989 the plaintiff-appellee River Marine Contractors, Inc. ("River Marine") entered into a preliminary lease with the Port of St. Bernard, as the owner of the premises, whereby the port allowed River Marine access to its premises to conduct an investigation into the feasibility of using the location for construction and operation of an international marine cargo facility. *655 The Port of St. Bernard also granted River Marine an option to lease the facility if its investigations into conducting a business there were favorable.
The Port of St. Bernard and Port of New Orleans each claim regulatory jurisdiction over the proposed facility.
On September 13, 1989 River Marine brought suit against both port authorities, seeking a declaratory judgment regarding which port has authority to issue permits and to regulate the operation of a multipurpose terminal handling cargo in domestic and foreign commerce. The Port of New Orleans reconvened for a declaratory judgment that it has exclusive jurisdiction over the proposed facility.
The Port of New Orleans filed various exceptions which have been disposed of and are no longer at issue on this appeal. See: River Marine Contractors Inc. v. Board of Com'rs of St. Bernard Port, Harbor and Terminal Dist., 559 So.2d 1383 (La. 1990) and River Marine Contractors, Inc. v. Board of Com'rs of St. Bernard Port, Harbor and Terminal Dist., 568 So.2d 620 (La.App. 4th Cir.1990), writs denied, 571 So.2d 645 (La.1990).
River Marine filed a Supplemental and Amending Petition for Declaratory Judgment on April 3, 1991, adding a demand for monetary damages allegedly resulting from the Port of New Orleans' tortious interference with their contract with the Port of St. Bernard. The Port of New Orleans filed an Answer and Reconventional Demand, raising a peremptory exception of no cause of action and asserting affirmative defenses of assumption of risk, comparative negligence, failure to mitigate damages, and third party fault of St. Bernard on April 23, 1991. Also included was a reconventional demand against River Marine and a cross-claim against the Port of St. Bernard for any damages for which the Port of New Orleans might be held liable.
The declaratory judgment claim and reconventional demand proceeded to trial in St. Bernard Parish on the issue of jurisdiction. (Prior to trial the Court severed the damage claim).
After receiving documentary evidence and hearing oral argument (the court had granted the Port of New Orleans' motion to exclude testimony regarding interpretation of the statutes at issue) the court rendered judgment against the Port of New Orleans declaring the Port of St. Bernard "has authority to regulate operation of all commerce, including international commerce, where such is conducted by or through a facility wholly owned" (emphasis added) by the St. Bernard Port, Harbor and Terminal District. The Port of New Orleans appeals.
In the final analysis the case hinges on whether the Port of St. Bernard had regulatory jurisdiction over international commerce conducted by or through a facility located in St. Bernard Parish which is owned by the Port of St. Bernard.
No one contests the fact that the Port of New Orleans has general regulatory authority over the parishes of Orleans, Jefferson and St. Bernard [see Act 70 of 1896 which provisions as amended are now contained in LSA-R.S. 34:1 et seq.; State ex rel. Tallant v. Board of Com'rs of Port of New Orleans, 161 La. 361, 108 So. 770 (La.1926); Barrett Mfg. Co. v. Board of Com'rs for Port of New Orleans, 133 La. 1022, 63 So. 505 (1913) ], subject to exceptions carved out in favor of the Port of St. Bernard beginning with the creation of what is now The Board of Commissioners of the St. Bernard Port, Harbor and Terminal District by Act 228 of 1960 which provisions are contained in LSA-R.S. 34:1701-34:1715.
No one contests the fact that the Port of St. Bernard has the authority to regulate domestic commerce within its territorial limits where such is conducted by or through a facility wholly owned by the Port of St. Bernard. LSA-R.S. 34:1701 and LSA-R.S. 34:1705 as amended in 1980. No one seriously contests the fact that the Port of New Orleans at all times relevant to this case had regulatory jurisdiction over international commerce in St. Bernard Parish where such was not conducted by or through a facility wholly owned by the Port of St. Bernard.
*656 Since 1980 LSA-34:1701 "Creation and territorial limits" provided:
The St. Bernard Port, Harbor and Terminal District, created as a public corporation and political subdivision of the state of Louisiana under the authority of Section 31 of Article XIV of the Constitution of the state of Louisiana for the year 1921, as amended, shall have territorial limits coextensive with the parish of St. Bernard. The territorial limits and territorial jurisdiction of said district shall be the territory, including all lands, waterways, rivers, lakes, and navigable bodies, comprising and lying within the limits and boundaries of St. Bernard Parish. The board of commissioners for the district shall have complete jurisdiction to regulate all domestic, coastwise, and intercostal commerce and traffic of said district, and all commerce and traffic wholly owned by the district.
Since 1980 LSA-R.S. 34:1705(B) has read: (B). The board of commissioner of the St. Bernard Port, Harbor and Terminal District shall have the sole power to regulate, pursuant to R.S. 34:1703, the domestic, coastwise, and intercostal commerce and traffic of said district and all commerce and traffic conducted by or through facilities wholly owned by the district, whose origin and destination is wholly within the continental United States, including coastal waters. The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall also have and exercise the powers presently enjoyed by the board of commissioners of the Port of New Orleans pursuant to R.S. 9:1102.1 in all cases where riparian owners of property on navigable rivers, lakes, or streams within said district desire to construct wharves, buildings, or improvements on the batture or banks owned by them, which are designed and used for such commerce and traffic whose origin and destination is wholly within the continental United States, including coastal waters.
(Note: Act 40 of 1992 which was enacted while this appeal was pending amended LSA-R.S. 34:1701, et seq., to specifically provide that the powers of the Port of St. Bernard include the regulation of international commerce in its territory where such commerce is conducted by or through a facility wholly owned by the Port of St. Bernard. This may settle the matter prospectively, but does not resolve the issue for the prior period encompassed by this litigation).
Basically, the Port of New Orleans argues that the language in LSA-R.S. 34:1705(B) which states that the Port of St. Bernard, "shall have the sole power to regulate, pursuant to LSA-R.S. 34:1703, the domestic, coastwise, and intercostal commerce and traffic of said district and all commerce and traffic conducted by or through facilities wholly owned by the district, whose origin and destination is wholly within the continental United States, including coastal waters" (emphasis supplied), effectively limits the jurisdiction of the Port of St. Bernard to domestic commerce, leaving the regulation of international commerce to the Port of New Orleans. We agree.
This language is so clear that it is not debatable. The same terminology is repeated verbatim in the next sentence of LSA-R.S. 34:1705(B).
"The board of commissioners of the St. Bernard Port, Harbor and Terminal District shall also have and exercise the powers presently enjoyed by the board of commissioners of the Port of New Orleans ... in all cases where riparian owners of property an navigable rivers ... which are designed and used for such commerce and traffic whose origin and destination is wholly within the continental United States, including coastal waters. (Emphasis added).
"... [W]hose origin and destination is wholly within the continental United States, including coastal waters" is unambiguous. Jurisdiction over international commerce is excluded.
"When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." LSA-R.S. 1:4. "When a law is clear and unambiguous and *657 its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. LSA-C.C. art. 9 (formerly LSA-C.C. art. 13). See also: Ramirez v. Fair Grounds Corp., 575 So.2d 811 (La.1991). Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); Gill Trailer & Equip. Rentals, Inc. v. S. D'Antoni, Inc., 282 So.2d 714 (La.1973).
"Furthermore, if ... the legislature erred in expressing its intention, it is not the function of the judicial branch to correct such an error, unless the error creates an ambiguity. Such an error (if one occurred) should be corrected by the legislature." Rada v. Administrator, Div. of Emp. Sec., State, D. of L., 319 So.2d 460 (La.App. 4th Cir.1975), writ denied 323 So.2d 128 (La.1975).
In other words, this Court must give effect to what the legislature said, not what it may have intended:
... Members of the general population will look to the words of statutes to determine their legal rights and obligations. When the message conveyed by those words is sufficiently clear, citizens should have a right to rely on that messageeven if the message deviates from the actual understanding of the legislature.
* * * * * *
However, each time a court ignores the plain meaning of a statute, confidence in statutory language is undermined." Maltz, Statutory Interpretation and Legislative Power: The Case For A Modified Intentionalist Approach. 63 Tul.L.Rev. 1, 22, 23 (1988).
The judgment is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.