Dear Mr. Rowley:
You requested an opinion from our office as to the legality of an ordinance by the St. Bernard Parish Council seeking to merge and consolidate the St. Bernard Port, Harbor and Terminal District (District) into the parish government.
According to the information you sent us, the St. Bernard Parish Council seeks to merge and consolidate into the parish government — i.e., to take over — the District by putting the question to a vote of the parish electors at a local referendum in the form of amending its "home rule charter" (apparently adopted pursuant to La. Const. (1974) art. VI, § 5, sometime after its effective date), but it also seems that the District wishes to retain its autonomy and questions the legal validity of the merger and consolidation unilaterally initiated by the parish council. As a result of the raising of the legal question, you were first requested to render your legal opinion on the matter to these two local entities but were forced to decline due to a conflict of interest in that you are legally required to represent and counsel both entities as the local district attorney; for the same reason, you were unable to provide us with the usual memorandum containing the legal position and supporting authorities that our ongoing office policy calls for with regard to similar opinion requests. Discerning the desire of the local entities to have the question answered by our office, if you could not do it, you forwarded the request to us.
The council resolution and its scheduled events indicates that the Council believes it is proceeding under the authority of La. Const. (1974) art. VI, § 16, which provides:
 § 16(A) Consolidation. A local governmental subdivision may consolidate and merge into itself any special district or local public agency, except a school district, situated and having jurisdiction entirely within the boundaries of the local governmental subdivision. Upon the consolidation and merger, the local governmental subdivision shall succeed to and be vested with all of the rights, revenues, resources, jurisdiction, authority, and powers of the special district or local public agency. A consolidation and merger shall become effective only if approved by a majority of the electors voting thereon in the local governmental subdivision as a whole and by a majority of the electors voting thereon in the affected special district. A local public agency shall be consolidated and merged only if approved by a majority of the electors voting thereon in an election held for that purpose in the local governmental subdivision in which the agency is located.
 (B) Assumption of Debt. If the special district or local public agency which is consolidated and merged has outstanding indebtedness, the authority provided by this Section shall not be exercised unless provision is made for the assumption of the indebtedness by the governing authority of the local governmental subdivision involved.
The District was established by R.S. 34:1701 et seq., and R.S.34:1701 states, in part, that the District "shall have territorial limits coextensive with the parish of St. Bernard." Thus, on the mere face of La. Const. (1974) art. VI, § 16, and that part of R.S. 34:1701 quoted above, it would appear superficially that the ordinance by the Council seeking to merge and consolidate the District into the parish government was valid. However, we believe other provisions of the state constitution and law come to intervene in this question and force us to conclude otherwise.
"Home rule charters" adopted pursuant to La. Const. (1974) art. VI, § 5, must, of course, be "[s]ubject to and not inconsistent with [the 1974 state] constitution," id. And La. Const. (1974) art. VI, § 43, expressly and specifically provides:
 § 43. Port Commissions and Districts
 All deep-water port commissions and all deep-water port, harbor, and terminal districts as organized and constituted on January 1, 1974, including their powers and functions, structure and organization, and territorial jurisdiction, are ratified and confirmed and shall continue to exist, except that:
 (1) The legislature by law may grant additional powers and functions to any such commission or district and may create new port commissions or port, harbor, and terminal districts. (2) Only by law enacted by the favorable vote of two-thirds of the elected members of each house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and redistribution of the powers and functions of any such commission or district, including additions to or reductions of its territorial jurisdiction.
 (3) The legislature shall enact laws with respect to the membership of the commissions provided in this Section. Once the law with respect to membership is enacted, it may be changed only by law enacted by the favorable vote of two-thirds of the elected members of each house.
Thus, the continuing existence as well as the powers, functions, structure, organization and territorial jurisdiction of a deep-water port, harbor and terminal district organized and constituted on January 1, 1974, are:
 . . . protected by Article 6, Section 43 of the State Constitution which prohibits any `reduction' in its authority except by passage of an act requiring a two-thirds vote of the House and Senate.
 We find that the [deep-water port, harbor, and terminal] District is an `arm' of the State. Therefore, the police jury's general zoning authority must yield to the District's power and function which emanate wholly from the State."
Lake Charles Harbor Terminal District v. Calcasieu ParishPolice Jury, 613 So.2d 1031, 1033 (La.App. 3rd Cir. 1993) (explaining that the state, through the legislature, has created and incorporated the deep-water port, harbor and terminal district to exercise the state's superior police powers over the navigable waterways and their banks and shores and other such state public property statutorily entrusted to it).
In our view, the District is a deep-water port, harbor and terminal district organized and constituted prior to January 1, 1974, whose continuing existence, powers, functions, structure, organization and territorial jurisdiction falls within the protection of La. Const. (1974) art. VI, § 43. First, the District was initially created by Act 228 of 1960 (enacting R.S.34:1701 et seq.), which, by its own express terms, became effective on January 1, 1961. Second, La. Const. (1974) art. VI, § 44(7), defines "[d]eep-water port commissions" and "deep-water port, harbor and terminal districts" as those terms are used in Article VI (including Section 43 thereof) to mean "those commissions or districts within whose territorial jurisdiction exist facilities capable of accommodating vessels of at least twenty-five feet of draft and of engaging in foreign commerce." From the factual and legal information that has been brought to our attention, the District appears to fulfill this criteria: Act40 of 1992 clarified that the District's powers include the regulation of international commerce in its territory where such commerce is conducted by or through a facility wholly owned by it. See the "Note" appearing in parentheses in River MarineContractors, Inc. v. The Bd. Of Comm'rs for the St. Bernard Port,Harbor and Terminal District, et al., 605 So.2d 654 (La.App. 4th Cir. 1992) writ denied 607 So.2d 568 (La. 1992) at 605 So.2d 656 (conceding that Act 40 of 1992 requires a different conclusion than reached in that particular case). Indeed, the factual circumstances of the River Marine Contractors case and the very fact that the Port of New Orleans could claim fee-regulation authority over the leased facilities belonging to and within the territorial boundaries of the district therein, reveal that those facilities were those of a deep-water port. In addition, R.S.34:1703, even prior to Act 40 of 1992, granted to the District the power to dredge to the "Mississippi River — Gulf Outlet" and, therefore, to connect and provide its port, harbor and terminal facilities (existing, of course, within its territorialjurisdiction) to shipping engaged in foreign commerce.
In light of these authorities, we are compelled to conclude that the ordinance by the St. Bernard Parish Council seeking to merge and consolidate — i.e., "take over" — the St. Bernard Port, Harbor and Terminal District is legally and constitutionally invalid.
Trusting this opinion has fully answered your question, we remain
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH/cla